432 A.2d 616

COMMONWEALTH of Pennsylvania

v.

Richard NOLAN.

Appeal of ALLEGHENY MUTUAL CASUALTY COMPANY.

COMMONWEALTH of Pennsylvania

v.

Franklin E. WITHERSPOON.

COMMONWEALTH of Pennsylvania

v.

Samuel L. WESTBROOKS, Jr.

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed July 10, 1981.

James L. Weisman, Pittsburgh, for Allegheny Mut., appellant.

Edwin J. Strassburger, Assistant County Solicitor, Pittsburgh, for Witherspoon and Westbrooks, appellants.

Dennis R. Biondo, Assistant County Solicitor, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

Allegheny Mutual Casualty Company [hereinafter Allegheny Mutual] was a surety on a bond for each of the defendants—Nolan, Witherspoon, and Westbrooks, in the above-captioned cases. In each case, the bond was forfeited and paid to Allegheny County upon the defendant's failure to appeal in court. All the defendants were subsequently apprehended and returned to the jurisdiction of the Court of Common Pleas of Allegheny County, and on October 12, 1978, Allegheny Mutual presented petitions for refunds of the bond forfeitures in the three cases. Following a hearing on November 8, 1978, the lower court granted Allegheny Mutual's petitions for refund of the bond forfeitures in the *Witherspoon* and *Westbrooks* cases, but denied the refund of the bond forfeiture in the *Nolan* case. Allegheny County appealed from the orders granting the refunds in *Witherspoon* and *Westbrooks*, and Allegheny Mutual appealed from the order denying the refund in *Nolan*.

Prior to the Judiciary Act Repealer Act, 42 Pa.C.S. §§ 20001–20004 [hereinafter JARA], the statutes governing the remission of bond forfeitures by order of court were as follows:

### § 171. May be sued for in court of common pleas

All recognizances forfeited in any court of quarter sessions of the peace within this commonwealth, or in the sessions held for the city of Philadelphia, shall and may be .sued for and be recoverable in the court of common pleas of that county in which the said recognizances shall be forfeited respectively, which courts may, and they are hereby empowered to order the said recognizances to be levied, moderated or remitted, on hearing the circumstanc-

es of the case, according to equity and their legal discretion.

Act of December 9, 1783, 2 Sm.L. 84, § 2, 8 P.S. § 171.

### § 177. Repayment on defendant's surrender

In all cases where the county commissioners of any county shall collect, or have collected, any money upon any forfeited recognizance, duly estreated to such county commissioners by the clerk of the proper court and the same has been paid into the county treasury, and where the defendant in such case subsequently surrenders himself or herself to the jurisdiction of the proper court, or is subsequently apprehended and returned to the jurisdiction of the court, the county commissioners may, (a) with the consent of the district attorney, and (b) shall upon order of court in any case, repay to the party from whom such money was collected the amount so collected on such forfeited recognizance, exclusive of all costs paid or incurred by the county in such proceeding.

Act of July 11, 1917, P.L. 802, § 1; Act of May 13, 1931, P.L. 131, § 1, 8 P.S. § 177, *See Commonwealth v. Reeher*, 245 Pa.Super. 282, 369 A.2d 404 (1976).

Section 171 was repealed by JARA, effective June 27, 1978, and it was replaced by 42 Pa.C.S. § 931(a) and § 5702 of the Judicial Code which provide:

### § 931. Original jurisdiction and venue

(a) General rule.—Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas and actions pursuant to section 5110 (relating to limited waiver of sovereign immunity).

### § 5702. Bail to be governed by general rules

Except as otherwise provided by this title and the laws relating to the regulation of surety companies, all matters

relating to the fixing, posting, forfeiting, exoneration and distribution of bail and recognizances shall be governed by general rules.

Section 177 was also repealed by JARA and replaced by 42 Pa.C.S. § 5702, but the repeal was not effective until June 27, 1980.

The statutes which were in effect during the proceedings in this matter were 8 P.S. § 177 and 42 Pa.C.S. § 931(a) and § 5702. Section 5702 provides that the "exoneration and distribution of bail and recognizances shall be governed by general rules." A general rule is a rule or order promulgated by the governing authority (*i. e.*, the Supreme Court of Pennsylvania). 42 Pa.C.S. § 102. The only rule promulgated by the supreme court which prescribes a standard as to the remission of bond forfeitures is Pa.R.Crim.P. 4016, adopted on July 23, 1973, effective in sixty days:

**Rule 4016. Breach of Bail and Forfeiture of Bond; Process and Bail Pieces; Exoneration of Surety**

**A. Remedies on Breach**

(1) Forfeiture

. . . .

(c) The issuing authority or the court may direct that a forfeiture be set aside upon such conditions as may be imposed if it appears that justice does not require enforcement of the forfeiture.

. . . .

(3) Bail Pieces

The surety may apply for a bail piece from the court. If the court is satisfied that a bail piece is required, it may issue a bail piece authorizing the surety to apprehend and detain the defendant whenever and wherever he may be found and to bring the defendant before the issuing authority or court without unnecessary delay.

**B. Exoneration of Surety**

A surety may be exonerated by a deposit of cash in the amount of any forfeiture ordered or by timely surrender of a defendant in custody. When the conditions of the bond have been satisfied or the forfeiture thereof has

been set aside or remitted, the issuing authority or court shall exonerate the obligors.

■ Pennsylvania courts have uniformly interpreted 8 P.S. § 171 and § 177 and Pa.R.Crim.P. 4016 A.(1)(c) as giving the lower court discretion in deciding whether to remit forfeited money to a bail bondsman. *Commonwealth v. Reeher, supra.* We find that the repeal of section 171 does not change this standard, and that subsection A.(1)(c) of Rule 4016 provides the test which the lower courts should follow in deciding the issue of remission. The lower courts may, therefore, direct that a forfeiture be set aside upon such conditions as may be imposed if it appears that justice does not require enforcement of the forfeiture. When a bond forfeiture has been set aside or remitted, the court shall exonerate the bondsman. Pa.R.Crim.P. 4016 B.

■ A hearing is required on a bail bondsman's request for remission of forfeited money. *Commonwealth v. Ball,* 228 Pa.Super. 222, 323 A.2d 8 (1974) (*per curiam*):

Such a hearing is necessary in this case so that the court may have before it evidence of the extent of the appellant's participation in the return of the defendants, . . ., and any other relevant evidence appellant may produce which may properly guide the lower court in its future decision as to whether to return any portion of the forfeited bonds herein involved.

*Id.,* 228 Pa.Super. at 223, 323 A.2d at 8 (case citations omitted).

The required hearing was held in all of the above-captioned cases before the Honorable Robert E. Dauer of the Court of Common Pleas of Allegheny County, and we adopt the lower court's summary of facts for each case.

### Witherspoon

The defendant was charged with Unauthorized Use of an Automobile and Receiving Stolen Property . . . . On June 26, 1976, Petitioner, Allegheny Mutual Casualty Company, entered a bail bond in the amount of $1000.00 to

assure Witherspoon's appearance in court (H.T. [48–49]). On September 15, 1976, the bond was forfeited upon defendant's failure to appear for trial. . . . Petitioner paid the bond on February 2, 1977 (H.T. 59). Ultimately, the defendant was apprehended on January 11, 1978 (H.T. 49). He entered a plea of guil[t]y to the aforementioned charges on February 22, 1978. Allegheny Mutual Casualty filed a Petition for Refund of the Forfeiture contending that it was entitled to the return of the forfeited money because its agent, David Wander, made every effor[t] to locate and apprehend Witherspoon. Following a hearing, this Court by an Order dated February 15, 1979, granted the refund on the forfeiture.

. . . .

David Wander, the bondsman and agent of petitioner, testified to his efforts to locate Witherspoon which included contacting the defendant's girlfriend, Marsha Walker, (H.T. 52, 60); contacting various other friends and relatives (H.T. 50); circulating defendant's picture with various police departments (H.T. 50, 53); sending a tracer letter on July 4, 1977 in an effort to learn of a new mailing address, (H.T. 50, 60). Wander was not certain whether he placed a "stop" with the F.B.I. (H.T. [52–53]) or if he notified a private bail recovery agency of Witherspoon's forfeiture, (H.T. 57–58). Wander did have a bail piece issued, (H.T. 57).

. . . .

Wander testified that while persuing . . . [an] edition of the McKeesport Daily News, knowing that the defendant was from the Cla[ir]ton-McKeesport area, he noticed an article indicating that an individual named "Frank Wit[t]erspoon" had been arrested, (H.T. [50–51]). He immediately contacted that police agency, advised them of his suspicions, and learned that the man was on bond but had a hearing scheduled for January 11, [1978] (H.T. [51–52, 56, 60]). Armed with the bail piece, defendant's picture, social security number, and fingerprints, Wander went to the hearing and arrested defendant on sight, (H.T. [52–57]).

Lower ct. op. of September 6, 1979, at 1–3 (footnotes omitted).

### Westbrooks

The defendant was charged with one count of Robbery .... [O]n July 8, 1975, Petitioner, Allegheny Mutual Casualty Company, entered a bail bond in the amount of $2,000.00 to assure Westbrooks' presence in Court (H.T. 79). On October 22, 1975, the bond was forfeited upon defendant's failure to appear for trial (H.T. 80). The bonding company paid the bond on October [7], 1976. Eventually, Westbrooks was apprehended in the state of Maryland where he had been arrested; he was returned to this jurisdiction on June 2, 1977 (H.T. 83–84) and later entered a plea of guilty to the charge. Allegheny Mutual Casualty filed a Petition for Refund of the Forfeiture conten[d]ing that it was entitled to the return of the forfeited money because its agent, David Wander, made every effort to locate and apprehend the defendant. Following a hearing, this Court by an Order dated February 15, 1979, granted the refund on the forfeiture.

. . . .

David Wander, agent for the bonding company, testified as to his efforts to locate the defendant which included contacting the defendant's mother and sister on several occasions (H.T. 80, 89), contacting friends and employing paid informers (H.T. [80–81]). The bondsman also testified that he believed that he placed a "stop" with the F.B.I. although he had no record of doing so, (H.T. 82). He further indicated that his sources informed him in October of 1976, that Westbrooks was involved in an accident and was hospitalized in Jess[u]p, Maryland (H.T. 81). He immediately contacted the hospital and State Police only to learn that the defendant had been released, (H.T. 81, 89). He then forwarded a copy of the warrant and bail piece to the Maryland Police, (H.T. 82, 84). Westbrooks was apprehended by the Maryland authorities and returned to this jurisdiction on June 2, 1977 by the

local Sheriff (H.T. 83, 92–93). Wander testified that he believed that he learned of Westbrooks' arrest through the National Criminal Identification Center (H.T. 82). The County offered no evidence but it was stipulated that the cost of returning Westbrooks to the jurisdiction amounted to $223.70 (H.T. [97–99]).

Lower ct. op. of September 6, 1979, at 1–2 (footnote omitted).

### Nolan

The Defendant was charged with Theft and Receiving Stolen Property . . . . On March 15, 1975, the Allegheny Mutual Casualty Company, a bail bonding company operating within the County, entered a bail bond in the amount of $2,000.00, on behalf of the defendant. (H.T. [7–8]). On June 5, 1975, bond was forfeited when Nolan failed to appear for a scheduled court proceeding. On October 7, 1976, the bonding company paid the forfeiture to the County of Allegheny. (H.T. [8]). Nolan was eventually apprehended by police in Smyrna, Delaware on charges involving a credit card (H.T. [13], 38–39). He was ultimately returned to the jurisdiction on January 26, 1978. (H.T. [8–9]). The charges against defendant were nolle prossed on April 19, 1978 due to the inability of the Commonwealth to show due diligence relative to Rule 1100, Pennsylvania Rules of Criminal Procedure. (H.T. 33–35). In October of the same year, the bonding company filed a Petition for Refund of Bond Forfeiture contending that he is entitled to the return of the forfeited money because he made every effort to locate and return Nolan to this jurisdiction. [Following a hearing, this court by order dated January 17, 1979, denied the petition.]

. . . .

David Wander testified for the bonding company detailing his efforts to locate Nolan which included making a telephone call to Nolan's parole officer (H.T. 9); dispatching constables to rand[o]mly search and, on occasions, to maintain surveillance of places Nolan would likely appear

at, [including a funeral home following the death of Nolan's father] (H.T. [9–10, 12–13], 16); placing a "stop" on Nolan with the F.B.I. (H.T. 12, 30); forwarding bail piece documents to the Carnegie Police and later, to authorities in Fairborn, Ohio when information indicated Nolan was in these areas (H.T. 10–11); and upon receiving notice that the defendant had been apprehended in Delaware, dispatching a constable to return him to the jurisdiction (H.T. [14–15]). The County offered no evidence but the record was held open so that it could submit certified documents pertaining to Nolan's alleged incarceration in Ohio. (H.T. 42, 45). No records were provided the Court.

Lower ct. op. of August 21, 1979, at 1–2 (footnote omitted).

In *Commonwealth v. Reeher, supra,* this court noted the importance of a bondsman's participation in the actual return of the defendant as a factor in deciding whether to remit forfeited money.

'[T]he remission of forfeitures is a practice calculated to encourage bondsmen to actively seek the return of absent defendants. For this reason, the results of a bondsman's efforts as well as the extent of these efforts are prime considerations in the determination of the amount of any remission.' Therefore, the lower court did not abuse its discretion by focusing on this factor because this is precisely the undertaking which every bondsman implicitly agrees to guarantee.

*Id.,* 245 Pa.Super. at 286–287, 369 A.2d at 406 (quoting in part from lower ct. op.).

In *Witherspoon,* the bondsman, David Wander, was directly responsible for the return of the defendant to Allegheny County. Wander noticed an article in an edition of the McKeesport Daily News which stated than an individual named "Frank Witterspoon" had been arrested, and he pursued this information resulting in *his* apprehension of Witherspoon.

In *Westbrooks,* Wander's efforts did not directly result in the apprehension of the defendant. The facts indicate,

however, that Wander actively sought the return of Westbrooks, and that he was responsible for alerting the authorities in Maryland, where Westbrooks was finally apprehended, to the fact that Westbrooks was a fugitive. Wander learned from his own sources that Westbrooks was hospitalized in Jessup, Maryland, and he pursued this information by contacting the hospital and Maryland State Police. He was unable to apprehend Westbrooks because the defendant had already been released from the hospital, but Wander did forward a copy of the warrant and bail piece to Maryland State Police. We adopt the lower court's conclusion that in *Westbrooks*, "Wander's efforts were consistent with discharging his duties as a bondsman." Lower ct. op. of September 6, 1979, at 3.

In *Nolan*, Wander's only role in the actual return of the defendant to Allegheny County was to dispatch a constable to Delaware after Nolan had been arrested there. Although Wander forwarded bail piece documents to the Carnegie Police and later, to police to Fairborn, Ohio, he did nothing further in that regard and Nolan was not apprehended in either jurisdiction. We agree with the lower court that Wander "was lax in his pursuit of Nolan" and "simply relied on the authorities to locate him." Lower ct. op. of August 21, 1979, at 3.

In both *Witherspoon* and *Westbrooks*, the defendants were made to answer the charges brought against them in Allegheny County, but in *Nolan*, the charges against the defendant were *nol prossed* because Pa.R.Crim.P. 1100 was violated. The Commonwealth was unable to show due diligence on their part to locate Nolan. The lower court properly noted that "Nolan directly benefited by concealing himself from the authorities," *Id.* at 4, and that Rule 1100 "makes it all the more important for bondsmen to pursue [a] defendant." *Id.* at 3–4.

■ We conclude that the lower court did not abuse its discretion by focusing on the bondsman's participation in the actual return of the defendants in order to decide whether to remit the bond forfeitures. *Commonwealth v. Jones, et*

*al.*, 286 Pa.Super. 507, 429 A.2d 436 (1981); *Commonwealth v. Reeher, supra.* The orders of the court below in all of the above-captioned cases are affirmed.

SPAETH, J., files a concurring statement.

LIPEZ, J., concurs in the result.

SPAETH, Judge, concurring:

I join the majority's opinion, except I do not attach the same significance the majority does to the fact that the charges against Nolan were nol prossed because the Commonwealth had permitted Rule 1100 to run. I believe that whether refund should be ordered should depend upon the *bondsman's* conduct, not upon the Commonwealth's.