615 A.2d 696

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William Joseph CHOPAK, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 6, 1991.

Decided Sept. 30, 1992.

228

Geoffrey S. Casher, Asst. Dist. Atty., Roy A. Keefer, Dist. Atty., for appellant.

Robert J. Mulderig, Carlisle, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

The instant appeal is by the Commonwealth challenging the Order of the Superior Court filed November 1, 1988, [385 Pa.Super. 646, 555 A.2d 242 (table) ] which: 1) reversed the trial court's denial of reconsideration of post-verdict motions, *nunc pro tunc*, ordering them reinstated, and 2) reversed the trial court's Order of November 27, 1987, partially forfeiting the bail of Appellee. Upon review, the Superior Court concluded that the trial court abused its discretion and reversed and remanded the matter to the trial court. We granted review and the matter is presently before us for disposition.

230

William Joseph Chopak, Appellee, was convicted by a jury on both counts of recklessly endangering another person, 18 Pa.C.S. § 2705 and one count of aggravated assault, 18 Pa.C.S. § 2701.[1] The charges at issue flow from two distinct incidents in which Appellee was charged with pointing a .22 caliber revolver at a construction worker, and subsequently at a police officer, who appeared at his residence to arrest him on the initial charge.

Following his conviction on these charges, Appellee continued on bail pending sentencing. As part of the sentencing process, Appellee was scheduled to appear for a psychiatric evaluation for which he failed to appear. In addition, Appellee did not appear on September 4, 1986, the hearing date of his post-trial verdict motions. As a result of this incident on September 4, 1986, the trial court ordered that bail be revoked and issued a bench warrant for Appellee's immediate arrest.[2] The trial court also ordered that post-trial motions be dismissed without further consideration.

Appellee was apprehended on November 20, 1986 and was required to undergo a psychiatric evaluation at Norristown Hospital. As a result of that evaluation, he was diagnosed as suffering from a paranoid personality disorder. On May 7, 1987, Appellee was sentenced to a term of imprisonment of one to five years. Subsequently, Appellee filed a motion *nunc pro tunc* for reconsideration of his right to raise post-verdict motions. The basis asserted was that as a result of his condition, he was not responsible for his conduct which resulted in his flight. This motion was denied on October 19, 1987. On appeal to the Superior Court, a three judge panel, in addressing the trial court's denial of reconsideration of post verdict motions *nunc pro tunc* and the Order forfeiting bail, found these rulings to be error and remanded the matter to the trial court. The Order remanded by the three judge panel directed that: a) the judgment of sentence be vacated; b) the

1. Appellee was found not guilty of simple assault, 18 Pa.C.S. § 2701.
2. On January 23, 1987, the trial court amended the bail revocation Order of September 4, 1986 directing the proceeds of the forfeited bail to be used for Adams County.

Order of the trial court of October 14, 1987 be reversed; c) the post-trial motions be reinstated; and d) the Order of the Court of Common Pleas dated November 27, 1987 be reversed. The two issues instantly raised on appeal for our resolution are: 1) Whether the Superior Court properly reversed the decision of the trial court denying reconsideration of Appellee's post-verdict motions *nunc pro tunc*, and 2) Whether the Superior Court properly determined that the trial court committed error by first revoking Appellee's bail, then subsequent to his capture, amending the Order to require a partial forfeiture of his posted bail. For the reasons that follow, we reverse the decision of the Superior Court.

## I.

### Post–Verdict Motions

We first address that issue raised with regard to the trial court's Order denying reconsideration of Appellee's post-trial verdict motions by Order of October 14, 1987 after he was apprehended. It is to be noted that the initial ruling dismissing the post-verdict motions during the time that Appellee was in a fugitive status is not here being questioned. Appellee concedes the propriety of such a motion. *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984); *Commonwealth v. Galloway*, 460 Pa. 309, 333 A.2d 741 (1975); *Commonwealth v. Borden*, 256 Pa.Super. 125, 389 A.2d 633 (1978).

The Commonwealth, Appellant, argues that the trial court did not err in denying Appellee's post-verdict motions *nunc pro tunc* without consideration because when the Appellee fled the jurisdiction of the court, he waived certain rights which he would otherwise have had. This decision, it is argued, lies solely within the discretion of the trial court and as such, may not be overturned absent a showing of abuse of discretion. The Commonwealth further maintains that the Appellee's subsequently proffered excuse for fleeing, his "mental illness", was rejected by the trial court in its discretion based upon sound reason and judgment.

Appellee, however, maintains that his diagnosed paranoid personality disorder was responsible for his flight and asserts that since his behavior was solely attributable to that mental disorder, it ought not be a basis for denying his right to appeal. He further contends that the record of the proceedings below does not support the trial court's finding that his mental illness was insufficient to render him not responsible for his flight.

The decision to grant or deny a *nunc pro tunc* post-verdict motion lies within the sound discretion of the trial court. *Commonwealth v. Craddock,* 370 Pa.Super. 139, 535 A.2d 1189 (1988), *affirmed,* 522 Pa. 491, 564 A.2d 151 (1989). Contrary to the assertions of Appellee, it is apparent from the trial court's opinion that it fully considered, not only Appellee's legal responsibility for having fled the jurisdiction of the court, but also his competence to stand trial. Rather than overlooking the newly proffered defense of psychological disorder as alleged by Appellee, the trial court analyzed Appellee's mental and emotional condition and merely determined that in its estimation, those problems did not warrant the reconsideration of his post-verdict motions.

As the trial court stated in its opinion filed with the Order dismissing the *nunc pro tunc* petition for post-verdict motions:

There has never been the slightest indication that defendant was insane or incompetent to stand trial. His refusal to admit error can either be described as stubborn or deranged. In the absence of proof of derangement it can only be concluded that the attitude is, at most, anti-social. The report from Norristown State Hospital indicated a diagnosis of paranoid personality disorder. *There was no indication of psychosis. Indeed, the report said defendant was ready for sentencing.*

*Commonwealth v. Chopak,* Nos. 187–86 and 188–86 slip op. at 3 (Court of Common Pleas of Adams County, Pennsylvania, October 14, 1987).

Instantly, we are presented with a situation similar to that faced by the Superior Court in *Commonwealth v. Edward,* 303

Pa.Super. 454, 450 A.2d 15 (1982), which involved the revocation of a defendant's probation for violations of the conditions of his probation. In considering the issue of the *defendant's competency to participate in the probation revocation hearing,* the *Edward* court stated:

> Thus, the record reflects inconsistent at least, if not conflicting, psychiatric evidence, erratic behavior by appellant, and an expression of uncertainty by the lower Court. Nevertheless, we have concluded that *we should not disturb the lower court's finding* that appellant was competent to participate in the probation revocation hearing. The lower court judge is an experienced judge, who plainly considered the case conscientiously. He knew appellant from appellant's past appearances before him, and *he had the advantage, which we do not have, of seeing appellant.*

*Id.* at 465, 450 A.2d at 20 (emphasis added). Instantly, the trial court was aware of Appellee's mental condition and considered the psychiatric evaluation in denying Appellee's request for reconsideration.[3]

In *Commonwealth v. Higgins,* 492 Pa. 343, 349, 424 A.2d 1222, 1225 (1980), *cert. denied,* 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981), this Court concluded that an individual who had been suffering from a lengthy and chronic psychological malady was nonetheless competent to stand trial. In *Higgins* we reiterated:

> "The test to be applied in determining the legal sufficiency of [a defendant's] mental capacity to stand trial, or enter a plea at the time involved, is not the M'Naghten 'right or wrong' test, but rather his ability to comprehend his posi-

3. Indeed, as was stated by the trial court

 [I]n the opinion of the Court, reasons for sentencing were explained in detail. Defendant is, because of his *attitude,* a serious threat to society. He will not voluntarily pursue counseling, therapy or other intervention. It is thought that a substantial involvement with the corrective system is required. Until defendant is forced to address his problems he should not be allowed in society. He has already demonstrated he will not voluntarily pursue therapy.

 *Commonwealth v. Chopak,* Nos. 187-86 and 188-86 slip op. at 2-3 (Court of Common Pleas of Adams County, Pennsylvania, October 14, 1987). Thus, in the absence of any evidence of substantive psychosis the court property rejected claims of mental impairment.

tion as one accused of murder and to cooperate with his counsel [in making a rational] defense."
*Id.* (quoting *Commonwealth v. Melton,* 465 Pa. 529, 534, 351 A.2d 221, 224 (1976)). *See also Commonwealth v. Tyson,* 485 Pa. 344, 402 A.2d 995 (1979).

Instantly, the question raised is limited to whether or not Appellee should have the consequences of his flight from the jurisdiction mitigated by virtue of an alleged mental defect whose validity was considered suspect by the trial court. There is no evidence that Appellee lacked the capacity to comprehend the position he was in or that he was unable to assist counsel in his defense. Appellee merely displayed a "bad attitude" and refused to cooperate with his examiners. Indeed, his very flight prior to sentencing could well reflect an astute awareness on his part of the gravity of his situation. Therefore, for the reasons so properly set forth in *Commonwealth v. Edward, supra,* we believe that the action of the trial court was a valid exercise of its discretion resulting from a thorough firsthand analysis and observation of Appellee.

 It is well settled that while trial courts have broad discretionary powers, the exercise of such discretion may be subjected to appellate scrutiny when it is apparent that those discretionary powers have been abused. *Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240 (1991); *Bellettiere v. City of Philadelphia,* 367 Pa. 638, 642, 81 A.2d 857, 858 (1951). *See, e.g., Foster v. Waybright,* 367 Pa. 615, 80 A.2d 801 (1951); *Chapple v. Sellers,* 365 Pa. 503, 504–505, 76 A.2d 172, 173 (1950); *Rosanoff v. Duquesne University,* 365 Pa. 121, 123, 74 A.2d 172, 173 (1950); *Held v. Van Tiggelen,* 364 Pa. 317, 319, 72 A.2d 73, 74 (1950); *Lambert v. Durallium Products Corporation,* 364 Pa. 284, 286, 72 A.2d 66, 67 (1950); *People First National Bank and Trust Co., Administrator, v. Christ,* 361 Pa. 423, 428–29, 65 A.2d 393, 396 (1949); *Samuels v. Johnson,* 355 Pa. 624, 628, 50 A.2d 670, 672 (1947); *Hoban v. Conroy,* 347 Pa. 487, 489, 32 A.2d 769, 770 (1943); *Reese v. Pittsburgh Rwys. Co.,* 336 Pa. 299, 9 A.2d 394 (1939); *Marko v. Mendelowski,* 313 Pa. 46, 47, 169 A. 99, 100 (1933); *Williams, Receivers v. Southern Mutual Insurance Co.,* 312 Pa. 114,

121–22, 166 A. 582, 585 (1933); *Cuteri v. West Penn Rwys. Co.*, 305 Pa. 347, 350, 157 A. 686, 687 (1931); *Bailey v. C. Lewis Lavine, Inc.*, 302 Pa. 273, 277, 153 A. 422, 423 (1931); *March v. Philadelphia & West Chester Traction Co.*, 285 Pa. 413, 417–18, 132 A. 355, 357 (1926). However, in an area as especially sensitive as the psychological and emotional well being of an individual defendant, great deference ought to be accorded to the evaluations and conclusions of the trial judge as he personally observes those relevant behavioral circumstances regarding the defendant's alleged condition.[4] Instantly, we do not believe that the Superior Court could legitimately determine from a cold albeit, incomplete record of the proceedings below, that the conclusion of the trial court constituted an abuse of discretion. *See* note 3, *supra.*

Additionally, it strikes this Court as somewhat suspect that Appellee's attorneys now argue that a longstanding mental disorder rendered appellee unable to adhere to the conditions of his bail. Apparently, they were operating under serious misconceptions about his mental health as they never raised the issue of Appellee's competence to stand trial, nor was it raised when they successfully argued that appellee was deserving of release on bail.

The record before us compels the conclusion that the trial court, in its discretion, thoroughly considered appellee's situation and all relevant evidence in denying reconsideration of appellee's motion *nunc pro tunc*, thus, the judgment of the trial court must remain undisturbed. The Superior Court

---

4. In support of its position that the trial court violated defendant's right to due process by failing to inquire into appellees fitness to stand trial, the Superior Court questionably cites to *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). That case primarily concerns a defendant's fitness to proceed to trial after he made what was referred to as a "bona fide" suicide attempt. Instantly, however, there has never been a formal challenge raised regarding Appellee's competence to stand trial or to be sentenced. Drope, therefore is inapplicable as the issue presently before us is whether Appellee's "mental status" was a sufficiently compelling reason *to excuse his flight*. Furthermore, the trial court rejected Appellees' excuse of mental illness after thoroughly considering the evidence presented. Accordingly, such a finding may not be disturbed unless the record fails to support such a conclusion. *Commonwealth v. Kennedy*, 451 Pa. 483, 305 A.2d 890 (1973).

erred in reversing the trial court and in labeling that court's direct and competent determination an abuse of discretion. Therefore, we are constrained to reverse the Order of the Superior Court.[5]

## II.

### Bail Forfeiture

The second issue presented requires this Court to consider whether after issuing an Order on September 4, 1986, *revoking* Appellee's bail, the trial court had the authority to amend that Order to require *partial forfeiture* of that bail to be applied towards fines, costs and fees and then order partial remission of the bail forfeiture. Appellant, the Commonwealth, argues that the Superior Court improperly characterized the action of the trial court as an abuse of discretion. The Commonwealth contends that the trial court had authority under Rule 4016 of the Pennsylvania Rules of Criminal Procedure to forfeit the *entire* amount of the bail, if it so

**5.** Another matter for consideration, although not briefed or raised by the parties, concerns the Superior Court's comments regarding Appellee's (Appellant below), alleged failure to provide a complete record to the Superior Court. In reversing the trial court the Superior Court went on to add "[w]here as here, there is no complete record to review, we are constrained by the deficiencies of the record to vacate the judgment of sentence." Superior Court slip op. at 7–8. This is an incorrect and inappropriate standard of review. It has repeatedly been held by our courts that the burden to produce a complete record for appellate review rests *solely* with the appellant. *See Damiano v. Damiano*, 378 Pa.Super. 106, 110, 548 A.2d 298, 300 (1988) ("The responsibility for providing a record that is comprehensive and complete rests with appellant."); *Fox v. Gabler*, 377 Pa.Super. 341, 346, 547 A.2d 399, 401 (1988) ("It is the duty of the appellant to provide a record which is sufficient to permit meaningful appellate review. We have held that where the appellant is remiss in fulfilling this duty, the appeal must be quashed."); *Loomis Lake Associates by Hughes v. Smith*, 366 Pa.Super. 612, 621, 531 A.2d 1152, 1156 (1987) ("It is the responsibility of the *appellants* to ensure that the record on appeal is adequate.") (emphasis in original); *Commonwealth v. Williams*, 357 Pa.Super. 462, 466, 516 A.2d 352, 354 (1986) ("It is the appellant's responsibility to provide a complete and comprehensive record to the reviewing court for purposes of appeal.") We believe this to be the correct statement of law and cannot accept the reasoning of the Superior Court which would allow the appellee to reap the benefit of a new trial based upon his own nonfeasance.

desires, when a breach of a condition of bail occurs. Additionally, it is argued that courts have been granted broad latitude to issue any and all appropriate orders in the "interest of justice" which may include amending existing orders. Furthermore, once the trial court ordered partial forfeiture of bail it is argued that it clearly has the authority to benefit Appellee by having part of the money credited to the debt of Appellee. Thus, Appellant sees nothing objectionable in the trial court's allowing the money forfeited to the county to be allowed in part to be credited to the Appellee's debt.

Appellee, conversely, argues that the trial court was without authority to order bail forfeiture after having revoked bail and that the entire amount posted should have been returned to him upon his return to the jurisdiction as he was not truly responsible for breaching the conditions of bail due to his alleged psychological infirmities.

The Superior Court concluded that once bail was "revoked" the monies posted no longer constituted bail and the trial court was without authority to subsequently order those monies forfeited. For the reasons that follow we conclude that the Superior Court erred in its holding and accordingly, we reverse.

It has been repeatedly held by the courts of this Commonwealth that the decision to allow or deny a remission of bail forfeiture lies within the sound discretion of the trial court. *Commonwealth v. Mitchell,* 368 Pa.Super. 170, 533 A.2d 770 (1987); *Commonwealth v. Fleming,* 336 Pa.Super. 377, 485 A.2d 1130 (1984); *Commonwealth v. Nolan,* 288 Pa.Super. 484, 432 A.2d 616 (1981). Pursuant to Rule 4016(A)(1)(a) of the Pennsylvania Rules of Criminal Procedure, the trial court has the authority to forfeit a bond if a breach of bail conditions occurs.[6] Thus, when Appellee failed to appear for either his hearing or psychological evaluation he

---

6. Pennsylvania Rules of Criminal Procedure, Section 4016(A)(1)(a) states in pertinent part:

When a breach of a condition of bail occurs, the issuing authority or court may declare the bond forfeited....

Pa.R.Crim.P.Rule 4016(A)(1)(a).

breached the condition of his bail and the trial court had the authority to order the forfeiture of bail funds.

Appellee argues however, that as a result of his flight the court did not order "forfeiture" *per se* but rather the trial court ordered that his bail be "revoked" and issued a bench warrant for Appellee's arrest. Accordingly, Appellee asserts that once his bail was "revoked" the money involved no longer possessed the character of bail and as such it was no longer eligible for forfeiture by the trial court.

Bail has been long recognized as a procedure whereby an individual defendant provides a form of collateral "in exchange for the defendant's release from custody; it secures his future appearance and other requirements of his bond...." *Commonwealth v. McDonald,* 476 Pa. 217, 221, 382 A.2d 124 (1978). *See also Commonwealth v. Truesdale,* 449 Pa. 325, 296 A.2d 829 (1972). The trial court has the authority to order forfeiture of bail upon the occurrence of a breach of condition of bail. Pa.R.Crim.P. Rule 4016(A)(1)(a). However, Rule 4011 of the Pennsylvania Rules of Criminal Procedure states: *"[U]nless bail is revoked,* the bond shall be valid until full and final disposition of the case...." Pa.R.Crim.P. Rule 4011 (emphasis added). Thus, Appellee argues that the language of Rule 4011 mandates that once revocation occurs the existence of the bond terminates. Accordingly, since Appellee's bail was "revoked" by Order of September 4, 1986, it is claimed that the money was no longer bail under Rule 4011, and without an express declaration of forfeiture *per se* in the original Order, in accordance with Rule 4016(A)(1)(a), the subsequent forfeiture was beyond the authority of the trial court and therefore invalid.

In support of this conclusion, Appellee cites *Commonwealth v. McDonald,* 476 Pa. 217, 382 A.2d 124 (1978), which was relied upon by the Superior Court below. In *McDonald,* the defendant was arrested on criminal charges and posted bail. *Id.* at 219, 382 A.2d at 125. Before a final disposition of that case occurred, defendant was convicted on an unrelated federal charge and committed to federal prison. *Id.* In holding

that the defendant was entitled to receive his initial bail refunded to him, then-Chief Justice Eagen wrote:

> Rule 4015(b) authorizes the retention of a sum of money if it constitutes bail. Bail is given for the release of a person. *Since bail was, in effect, revoked,* by the incarceration of McDonald and the release of the surety, *the money no longer constituted bail.* Accordingly, the court no longer had the authority under Rule 4015(b) to retain the cash deposit until "full and final disposition of the case." Our conclusion is further supported by Rule 4011 which clearly indicates that revocation of bail invalidates a bond.

*Id.* at 222, 382 A.2d at 126 (emphasis added) (quoting Rule 4011). While we approve of the rationale and result of *McDonald* in that case, we believe its facts are sufficiently distinguishable from the instant matter, to find that it is not controlling. While the defendant in *McDonald* breached his condition of bail by failing to appear, he was technically not a fugitive. Rather than being an escaped prisoner, he was in the custody of federal prison authorities in Indiana. Thus, the Commonwealth filed a detainer with the federal authorities which allowed McDonald to be removed to a prison in the Commonwealth pending his new trial on the Pennsylvania charges. As such, bail was no longer necessary as the defendant in *McDonald* "no longer had the freedom from custody which the money was deposited to secure," and no purpose was to be served by withholding the funds from the defendant. *Id.* The incarceration was properly held to be an implied revocation of bail and thus, since the money no longer possessed the characteristic of bail, those funds involved were due the defendant.

In the matter *sub judice,* no such mitigating factors are present. Rather, Appellee fled the jurisdiction in blatant disregard of obligations agreed to and required in exchange for his release from custody. Thus, pursuant to Rule 4016(A)(1)(a), forfeiture was an authorized, constructive and appropriate sanction. While the court initially issued an order "revoking" bail which operates to invalidate a bond, this initially operated as a benefit to the Appellee while the bench

warrants were issued for his arrest, as he could have suffered a total and immediate forfeiture. Thus, the subsequent corrective order at issue herein, requiring partial forfeiture and subsequently remitting that forfeiture, was extremely lenient and generous to Appellee.[7] Such is an appropriate consequence to one who flees in violation of their bail, and because Appellee was not prevented from appearing by virtue of some official intervention as was the defendant in *McDonald,* its rationale is inapplicable for our purposes here.

■ Irrespective of whether the order of revocation was the product of leniency or administrative error, we conclude that the trial court has inherent powers to enact such measures to effectuate the administration of justice. Specifically, Section 323 of the Judicial Code states:

Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general

7. Specifically, the Order of the trial court, dated January 23, 1987, stated in pertinent part:
ORDER OF COURT
 AND NOW, January 23, 1987, it appears that the Order of September 4, 1986 failed to state that bail was actually forfeited to the use of the County of Adams; therefore, that Order is amended to provide that bail is forfeited to the use of the County of Adams....
*Commonwealth v. Chopak,* CC–187–86, (Court of Common Pleas of Adams County, January 23, 1987) (Order Amending Bail Revocation).
 This decision was within the authority of the trial court and was appropriate under the circumstances. Revocation of bail simply denies an individual defendant the opportunity to remain outside of custody pending the outcome of his judicial process. Bail forfeiture is a process whereby an individual defendant surrenders part or all of his bond and is appropriate when he breaches a condition of his bail. *See* Pa. R.Crim.P.Rule 4016(A)(1)(a). Appellee, by fleeing the jurisdiction prior to sentencing, rendered himself subject to the forfeiture consequence. To suggest that by virtue of issuing a preliminary order requiring bail "revocation" the trial court is somehow precluded from subsequently issuing an order of partial forfeiture is to fail to recognize the broad powers available to a court in order to promote justice. This position would effectively negate the option of bail revocation anytime a court seeks to regain custody of a defendant and would force a bail forfeiture on every occasion.

rules, *every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require.*

42 Pa.C.S. § 323 (emphasis added).

The Superior Court, in its opinion reversing the trial court apparently recognized these broad powers which operate to effectuate the orderly administration of justice, including the authority to amend an existing Order or issue a new Order pursuant to 42 Pa.C.S. § 323. The Superior Court in substituting its own judgment for that of the trial court stated: "We fail to see that the *interests of justice* require enforcement of a bail forfeiture . . . ." *Commonwealth v. Chopak,* No. 706 Harrisburg, 1987, slip op. at 11 (Pa.Superior Court, November 1, 1988) [385 Pa.Super. 646, 555 A.2d 242 (table) ] (emphasis added). That statement implicitly recognizes that to promote "the interests of justice," bail forfeiture would be an available remedy pursuant to an amended order, given the right reasons. The Superior Court erred, however, in rejecting the reasons given by the trial court and by substituting its own opinion that Appellee's alleged mental impairment was sufficient to shield him from suffering the consequences of his action. We expressly rejected that rationale in resolving the first issue presented herein.

The Appellee, regardless of his reasons, had a duty to appear and deliberately failed to do so. Once captured and returned, the trial court in its capacity as fact finder, thoroughly considered Appellee's proffered excuse of mental illness and promptly rejected its consideration as a mitigating factor. In reversing the trial court, the Superior Court failed to give the trial court's determination of credibility due deference and improperly substituted its judgment for that of the trial court. Accordingly, the Order of the Superior Court is reversed.

LARSEN, J., files a joining concurring opinion.

ZAPPALA, J., dissents.

242

LARSEN, Justice, concurring.

While I join the majority opinion in this case, I write separately to state that this Court's recent decisions in *Commonwealth v. Jones*, 530 Pa. 536, 610 A.2d 439 (1992) and *Commonwealth v. Judge*, 530 Pa. 403, 609 A.2d 785 (1992) subsume *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984). *Passaro* held that a convicted defendant, who escaped after filing a notice of appeal, had his appeal quashed and was later returned to custody, forfeited his appellate rights by virtue of his escape. In *Jones* we expanded and broadened *Passaro* by unequivocally stating that "a defendant's voluntary escape acts as a per se forfeiture of his right of appeal, where the defendant is a fugitive *at any time after post-trial proceedings commence*. Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody" (emphasis added).