**Commonwealth v. Rose**

C.P. of Carbon County, nos. 217 CR 01, 218 CR 01.

*David W. Addy, assistant district attorney,* for Commonwealth.

*Steven R. Serfass, county solicitor,* for Carbon County.

*Kim Liz Rose,* pro se.

*Joseph Miller,* pro se.

NANOVIC, *J.,* July 23, 2002— In these proceedings, the Carbon County District Attorney's office on behalf of the Commonwealth asks the court to direct that a portion of the proceeds of forfeited bail be paid as restitution to the victim of the underlying criminal offense. Whether the court has the legal authority to direct such

payment and, if so, whether the court should exercise its discretion as requested by the Commonwealth are the issues before the court.

On July 13, 2000, the defendant, Kim Liz Rose, and another individual gained entrance to the victim's home by subterfuge with the intent of taking cash and valuables from the victim's home. The victim is an 89-year-old female.

While in the home, the other individual distracted the victim while Rose, who pretended to use the bathroom facilities, searched the victim's home for cash and other valuables. $4,300 in cash and $2,402 in jewelry was located and taken from the victim's bedroom.

Rose was later identified and charged with burglary,[1] theft by unlawful taking,[2] theft by deception,[3] and receiving stolen property.[4] These charges against Rose are indexed to no. 217 CR 01. Subsequently, on December 3, 2001, Rose pled guilty to the crime of theft by unlawful taking.

At the time of the preliminary hearing before the District Justice, bail was set at $50,000 with security posted in the amount of 10 percent of the monetary condition (*i.e.,* $5,000) to obtain Rose's release from custody. The security was posted by Joseph Miller, who also acted as surety and executed the second page of the bond. This page of the bail bond contains a confession of judgment provision authorizing the entry of judgment against the

1. 18 Pa.C.S. §3502(a).
2. 18 Pa.C.S. §3921(a).
3. 18 Pa.C.S. §3922(a)(1).
4. 18 Pa.C.S. §3925(a).

surety and in favor of the Commonwealth of Pennsylvania for use of the county for the full amount of the monetary condition of release. A receipt for the deposit was provided to Mr. Miller.

On December 3, 2001, Rose also pled guilty to the charge of criminal trespass arising out of an incident that occurred on February 14, 2001, in which Rose, Helen Kopecz, and a third individual entered the home of an elderly gentleman without permission. The defendants were apprehended before being able to obtain any property and no financial loss was sustained by the victim. This case is indexed to no. 218 CR 01. Bail for Rose in this case was previously set by the magistrate at $100,000, 10 percent cash bail. This security was also posted by Joseph Miller, who again acted as surety on the bail bond.

Sentencing for Rose in both cases was originally scheduled for January 20, 2002, and continued at the request of her counsel, to February 25, 2002. On this new date for sentencing, defendant failed to appear. On motion of the Commonwealth made at the time of the scheduled sentencing, the court issued a warrant for defendant's arrest. By order dated February 25, 2002, defendant's bail was revoked and bail forfeited. Written notice of the revocation and forfeiture was given to defendant and her surety on May 14, 2002, by both first-class mail and certified mail. No petition for remission of bail has been filed by defendant or her surety. Nor has defendant been located or turned herself in to the proper authorities.

On June 4, 2002, the Commonwealth filed a petition to utilize the forfeited bail for restitution. Notice of the petition and date set for hearing and argument on the petition was provided to the defendant, her surety, and

Carbon County. The county has filed an answer opposing the petition and also appeared in opposition to the petition at the time of the scheduled hearing and argument on July 12, 2002. The county does not dispute the factual averments of the petition but does dispute the authority of this court to provide the relief requested by the Commonwealth. Neither the defendant nor her surety filed an answer to the petition or appeared at the hearing and argument held on July 12, 2002.

The initial appeal of the district attorney's argument for the application of forfeited bail proceeds to compensate the victim is belied by legal authority. In general, "all matters relating to the fixing, posting, forfeiting, exoneration, and distribution of bail and recognizances shall be governed by general rules." 42 Pa.C.S. §5702. These rules appear primarily in chapter 5, part C, of the Rules of Criminal Procedure.[5]

Defendant's failure to appear for sentencing violated an express condition of her bail bond and one mandated by Rule 526(A)(1).[6] The rules specifically authorize is-

---

5. Pa.R.Crim.P. 520-536. Rule 520 provides for the issuance of bail generally; Rule 524 identifies the types of release on bail, including release on a monetary condition; Rule 528 provides for determining the amount of the monetary condition and the form of security acceptable to satisfy the monetary condition. A cash deposit in the amount of 10 percent of the full amount of the monetary condition is authorized under Rule 528(C) & (D)(1) .

6. The first condition of defendant's bail bond provides that, "defendant must appear at all times required until full and final disposition of the case." The surety information page signed by Joseph Miller further provides that, "[i]f the defendant fails to appear as required ... the full sum of the monetary condition of release may be forfeited, the defendant's release may be revoked, and a warrant for the defendant's arrest may be issued."

suance of a bench warrant for defendant's arrest and forfeiture of cash or other security posted as bail when a condition of the bail bond is violated. Pa.R.Crim.P. 536(A)(1)(b) and 536(A)(2)(a).[7] Defendant and her surety must be provided with written notice of the forfeiture. Pa.R.Crim.P. 536(A)(2)(b). The forfeiture may not be executed upon until 20 days after notice of the forfeiture order. Pa.R.Crim.P. 536(A)(2)(c).

The Rules of Criminal Procedure do not provide for the disposition of forfeited bail. However, by statute, forfeitures imposed by the court of common pleas are payable to the county. 42 Pa.C.S. §3572. See also, *Commonwealth v. Graziadei,* 92 Pitts. L.J. 35, 37 (1943). Once forfeited, money deposited to secure a defendant's appearance or compliance with the conditions of the bail bond loses its identity as bail and becomes property of the county, subject to the possibility of being set aside or

---

7. "Bail has been long recognized as a procedure whereby an individual defendant provides a form of collateral 'in exchange for the defendant's release from custody; it secures his future appearance and other requirements of his bond ... .'" *Commonwealth v. Chopak,* 532 Pa. 227, 238, 615 A.2d 696, 702 (1992), quoting *Commonwealth v. McDonald,* 476 Pa. 217, 221, 382 A.2d 124, 126 (1978). Bail is defined in the Rules of Criminal Procedure as being, "the security or other guarantee required and given for the release of a person, conditioned upon a written undertaking, in the form of bail bond, that the person will appear when required and comply with all conditions set forth in the bail bond." Consequently, when bail is revoked, the defendant is denied the opportunity to remain outside of custody pending the outcome of his judicial process. *Id.* at 240 n.7, 615 A.2d at 703 n.7. In contrast, bail forfeiture refers to the process whereby part or all of the security posted for a defendant's release is surrendered when a condition of bail is breached. *Id.* at 240 n.7, 615 A.2d at 703 n.7.

remitted by the court pursuant to Pa.R.Crim.P. 536(A)(2)(d).[8]

A forfeiture, once declared by the court, may be set aside or remitted as justice requires. If a refund of for-

---

8. Previously, two statutes and former Rule 4016, now Rule 536, addressed the issues of forfeitures and remission of bail. In discussing the legal standard applicable to a bondsman's claim for remission of forfeited money, the Superior Court stated:

"Two statutes and one rule of criminal procedure delineate the legal standards applicable in this case. 8 P.S. §171 reads, '[a]ll recognizances forfeited in any court of quarter sessions of the peace within this Commonwealth . . . shall and may be sued for and be recoverable in the court of common pleas of that county in which the said recognizances shall be forfeited respectively, which courts may, and they are hereby empowered to order the said recognizances to be levied, moderated or remitted, on hearing the circumstances of the case, according to equity and their legal discretion.' 8 P.S. §177 . . . provides, '[i]n all cases where the county commissioners of any county shall collect, or have collected, any money upon any forfeited recognizance, . . . and the defendant in such case subsequently surrenders himself or herself to the jurisdiction . . . of the court, the county commissioners may, (a) with the consent of the district attorney, and (b) shall upon order of court in any case, repay to the party from whom such money was collected the amount so collected on such forfeited recognizance, exclusive of all costs paid or incurred by the county in such proceeding.' Rule 4016, subd. A(1)(c). Pa.R.Crim.P. (Supp. 1976) states, '[t]he issuing authority or the court may direct that a forfeiture be set aside upon such conditions as may be imposed if it appears that justice does not require enforcement of the forfeiture.' Pennsylvania courts have uniformly interpreted the foregoing statutes and rule to give the lower court discretion in deciding whether to remit forfeited money to a bail bondsman." *Commonwealth v. Reeher*, 245 Pa. Super. 282, 285-86, 369 A.2d 404, 405-406 (1976). (footnotes omitted) Both statutes referred to in *Reeher* were repealed by the Judiciary Act Repealer Act, 42 Pa.C.S. §20001-20004 (JARA), effective June 27, 1978. Section 171 was repealed by JARA effective June 27, 1978, and replaced by 42 Pa.C.S. §931(a) and section 5702 of the Judicial Code. Section 177 was replaced by 42 Pa.C.S. §5702, but the repeal was not effective until June 27, 1980.

feited moneys is requested by a surety, the court is obligated to hold a hearing and consider the equities of the claim. *Commonwealth v. Ball,* 228 Pa. Super. 222, 323 A.2d 8 (1974). The primary factor to be considered in deciding whether to remit forfeited money is the importance of the bondsman's participation in producing the defendant in court.

" '[T]he remission of forfeitures is a practice calculated to encourage bondsmen to actively seek the return of absent defendants. For this reason, the results of a bondsman's efforts as well as the extent of these efforts are prime considerations in the determination of the amount of any remission.' Therefore, the lower court did not abuse its discretion by focusing on this factor because this is precisely the undertaking which every bondsman implicitly agrees to guarantee." *Commonwealth v. Reeher,* 245 Pa. Super. 282, 286-87, 369 A.2d 404, 406 (1976) (quoting in part from lower ct. op.).

"Mere participation in the search for the defendant is not enough. The apprehension or return of the defendant must either be effected by the efforts of the bondsman or [those efforts must] *at least have a substantial impact* on his apprehension and return." *Commonwealth v. Fleming,* 336 Pa. Super. 377, 379, 485 A.2d 1130, 1131 (1984) (quoting from lower court opinion). (emphasis in original) Hearing on the surety's claim is necessary in order that the "court may have before it evidence of the extent of the [surety's] participation in the return of the defendants." *Commonwealth v. Ball, supra* at 223, 323 A.2d at 8.

Equitable principles apply when a court is faced with the decision whether to modify or remit a forfeiture.

*Commonwealth v. Nolan,* 288 Pa. Super. 484, 432 A.2d 616 (1981); *Commonwealth v. Bahn,* 74 D.&C.2d 122 (York Cty. 1975). In this case, if the court were to grant the Commonwealth's request and later determine that the defendant's surety is equitably entitled to a remission of the forfeiture, the forfeited money would no longer be available to remit. For the court to require the county to bear the burden of this risk and make refund to the surety out of the county's general funds, after having previously directed payment of the forfeited bail proceeds to the victim, would be grossly unfair to the county and its residents.[9]

Additionally, the Commonwealth has offered no legal authority for placing the burden of paying restitution on the surety. By statute, mandatory restitution needs to be ordered against the offender, not the surety, at the time of sentencing. 18 Pa.C.S. §1106. Here, the monies forfeited and from which the Commonwealth seeks payment for restitution were deposited by the surety, a receipt for the deposit was provided to the surety, and had the defendant satisfied all conditions of bail, the money would be required to be returned to the surety. *Common-*

---

9. One possible solution of avoiding the risk of the surety seeking remission in the future is for the county to commence suit against the surety for judgment on the surety bond. Since remission of forfeited bail is only authorized where the defendant is apprehended and returned to the jurisdiction of the court, whether the surety could later request remission of money paid in satisfaction of a judgment confessed on the forfeited bail bond or entered in a suit upon the bond appears to be an open question. *Commonwealth v. Fleming,* 336 Pa. Super. 377, 485 A.2d 1130 (1984); cf. *Commonwealth ex rel. Philadelphia v. Public Service Mutual Insurance Co.,* 213 Pa. Super. 327, 247 A.2d 636 (1968).

*wealth v. Tanur,* 355 Pa. Super. 188, 512 A.2d 1276 (1986).

Compounding the risk the Commonwealth asks the surety to assume, is the request that bail forfeited in one case be used to make restitution in another. The total amount of cash bail posted by the surety in case no. 217 CR 01 is $5,000 whereas the amount of restitution sought is $6,702. The Commonwealth asks that the difference be funded from the monies forfeited in case no. 218 CR 01, a case involving a different victim. The bail bond and other paperwork signed by the surety never advised the surety of this possibility and the surety never agreed to such disposition.

In *Commonwealth v. Kovalak,* 17 D.&C.3d 719 (Washington Cty. 1981), the court faced a challenge to its local rule which required a defendant and any third party depositing a percentage bail to agree that the costs of prosecution, fine, restitution and a $10 service fee would be deducted from the amount deposited, should defendant be found guilty. The court found the rule invalid, in part because its effect was to impose defendant's sentence upon persons other than the defendant. In language relevant to this decision, the court stated:

"A surety risks his money upon the probability of an event occurring. Incarcerated defendants might have relatives or third parties who believe that they will appear for trial. These third parties are able to gauge the risk involved before putting up bail, but they are in no position to gauge the merits of the case against defendant and make a gamble as to its outcome. As authority is not given by the Pennsylvania Rules of Criminal Procedure

to force this type of risk upon a third party, we find that it is invalid and strike it from the remainder of local court Rule 4006. We do not say at this time that fines, restitution and costs of prosecution cannot be taken from bail put up by defendant himself, but only that it is invalid to force a third party to consent to these additional deductions." *Id.* at 722.[10] To financially penalize sureties of defendants who have not been sentenced and, in the process, to permit defendants to escape responsibility for their own criminal conduct, subverts the very philosophy and purpose of the criminal law. *Commonwealth v. Bahn,* 74 D.&C.4th 122, 129 (York Cty. 1975). To foist on the surety defendant's obligations for restitution would result in replacing one victim with another.

Finally, the disposition requested by the Commonwealth would deprive the county of any claim it may make in the future for reimbursement of costs and expenses incurred in locating and returning the defendant to the jurisdiction of this court and the reasonable costs

10. Consistent with this language, Carbon County Local Rule 535.4 provides:

"Disposition of bail deposited by a third party: Where a third party surety has deposited money, under the percentage cash bail program or otherwise, the monies deposited shall be first applied to the administrative costs of the clerk of courts. With the voluntary written authorization of the person who deposited the bail, any balance shall then be applied to any restitution ordered by the court, then to the fine, if any, and then to other costs ordered by the court to be paid."

Similarly, 28 U.S.C. §2044 authorizes the court to order any money belonging to and deposited by or on behalf of a defendant with the court for the purposes of a criminal appearance bond to be held and paid over to the United States Attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. This authorization does not apply with respect to any third party surety.

of administering the percentage cash bail program. These costs are commonly retained by the county even when remission is ordered. *Commonwealth v. Jones,* 286 Pa. Super. 507, 429 A.2d 436 (1981).[11]

Fundamentally, what the Commonwealth is asking the court to do is to dramatically alter the law with respect to the disposition of forfeited bail, to direct the county on how it must use forfeited security and to place the risk of a premature disposition on the county and its residents. This the court will not do.

### ORDER

And now July 23, 2002, upon consideration of the Commonwealth's petition to utilize forfeited bail for restitution and after hearing arguments of the parties it is hereby ordered and decreed that the relief requested in the petition is denied and the monies forfeited in the above two cases are directed to be paid to the county for use of the county.

If and when the defendant or her surety, Joseph Miller, properly petition for remission, setting forth with specificity the relevant facts, and serve the petitions on the district attorney and county commissioners, we shall consider such applications at the appropriate time.

---

11. Although not intended, the position taken by the Commonwealth in these proceedings creates an antagonism between the Commonwealth, the county, and the victim when none should exist. Inherent in the Commonwealth's position is a need for the county in protecting its funds and the interest of the public to reduce damages sought in restitution by denying or extenuating the guilt of the defendant.