COMMONWEALTH of Pennsylvania, Appellee,

v.

Charles Anthony HERNANDEZ

and

Lehigh Valley Bail, John T. Robinson, and Safety National Casualty Company, Appellants.

Appeal of: Lehigh Valley Bail, John T. Robinson, and Safety National Casualty Company.

Superior Court of Pennsylvania.

Argued April 6, 2005.

Filed Sept. 30, 2005.

Reargument Denied Dec. 2, 2005.

Patrick J. Reilly, Allentown, for appellant.

Barry L. Treadwell, Jr., Asst. Dist. Atty., Easton, for Com., appellee.

BEFORE: STEVENS, TODD, and GANTMAN, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellants, Lehigh Valley Bail, John T. Robinson, and Safety National Casualty Company ("SNCC") ask us to determine whether the trial court erred or abused its discretion when it denied their petition to exonerate surety and vacate forfeiture of the bail posted on behalf of defendant, Charles Anthony Hernandez. Following our review of this case in light of the applicable law, we affirm the trial court's decision, albeit on additional grounds.

¶ 2 The trial court opinion accurately sets forth the relevant facts of this appeal as follows:

> On May 5, 2003, [Appellants] issued a bail bond in the amount of $50,000 for the defendant, Charles Hernandez, who faced charges of aggravated assault, simple assault, disorderly conduct, harassment, resisting arrest, and public drunkenness. Hernandez failed to appear at a hearing on October 21, 2003, and on that same day, this court declared him a fugitive, issued a warrant for his arrest, and ordered bail forfeited.
>
> According to testimony offered at a hearing on June 25, 2004, around December 2003, or January 2004, Steven Eleftheriou was employed by SNCC for the purpose of locating Hernandez. Eleftheriou spoke with the local police and [the] Northampton County Sheriff regarding his efforts to find Hernandez. Eleftheriou testified that he and his partner, George Coppola, spent between 60 and 80 hours[1] in their attempts to

---

1. The hearing transcript of Eleftheriou's testi-    mony suggests that he and Coppola **each**

discover and apprehend Hernandez. Eleftheriou's and Coppola's efforts included interviewing an informant, speaking with employees of local bars and restaurants, calling girlfriends of Hernandez, conducting telephone searches, and performing basic surveillance. One night, Eleftheriou and Coppola thought they spotted Hernandez in a house. Because of the late hour, Eleftheriou and Coppola thought it unsafe to approach the house alone. They requested the assistance of local police, but the police were reluctant to get involved. Because of the cold temperature outside, Eleftheriou and Coppola ended their surveillance that evening without apprehending Hernandez. Within weeks of that evening, Hernandez's photo was posted in the local newspaper naming him the "fugitive of the week."[2] Soon after, Eleftheriou and Coppola learned from their informant that Hernandez might have fled to York, Pennsylvania. Eleftheriou reported this information to David Ruberry of the Northampton County Sheriff's Department.

Jeffrey Hawbecker, Sheriff of Northampton County, testified that on April 12, 2004, a Hanover Borough, York County, police officer informed him that Hernandez was in custody at York County Prison on a detainer from Northampton County. Hernandez had walked to a hospital because he needed medical treatment for his gunshot wounds and a broken bone. Upon intake at the hospital, Hernandez identified himself. Hernandez's name was then located on the National Crime Information Center (NCIC) database, and Northampton County was notified. On April 14, 2004, the [Northampton County] [S]heriff's [D]epartment transported Hernandez back to Northampton County.

(Trial Court Opinion, filed January 24, 2005, at 1–2) (citations omitted). On May 26, 2004, Appellants filed a petition to exonerate surety and vacate forfeiture of bail. On June 25, 2004, the court held a hearing on the petition. On July 27, 2004, the court issued an order denying Appellants' petition. On August 4, 2004, Appellants filed this timely appeal. On August 20, 2004, the court ordered Appellants to file a Rule 1925(b) statement, which Appellants timely filed on August 26, 2004.

¶ 3 Appellants raise four issues for our review on appeal.

DID THE COURT BELOW COMMIT AN ERROR OF LAW OR ABUSE ITS DISCRETION WHEN IT DETERMINED THAT CONSIDERATION OF *COMMONWEALTH v. FLEMING*, 336 Pa.Super. 377, 485 A.2d 1130, 1131 (Pa.Super.1984), IS A "THRESHOLD INQUIRY" BEFORE THE CONSIDERATION OF THE REMITTANCE FACTORS SET FORTH IN *COMMONWEALTH V. MAYFIELD*, 827 A.2d 462 (Pa.Super.2003) IS APPROPRIATE AND, CONSEQUENTLY, DID THE COURT BELOW COMMIT AN ERROR OF LAW OR ABUSE ITS DISCRETION WHEN IT DID NOT APPLY THE *MAYFIELD* REMITTANCE FACTORS TO THE CASE AT HAND.

HAD THE COURT BELOW APPLIED THE BAIL FORFEITURE REMITTANCE FACTORS SET FORTH IN *MAYFIELD, SUPRA,* AND IN PARTICULAR CONSIDERED THAT (A) THERE IS NO EVIDENCE OF REC-

---

spent between 60 and 80 hours in their attempts to find and apprehend Hernandez. (N.T. Hearing, 6/25/04, at 6).

**2.** The Northampton County Sheriff's office placed the photo in the local newspaper.

ORD THAT THE COMMONWEALTH WAS PREJUDICED OR INCONVENIENCED AND (B) MITIGATING FACTORS EXISTED, SHOULD THE COURT BELOW, AS A MATTER OF LAW, HAVE DETERMINED THAT APPELLANTS WERE ENTITLED TO HAVE THE BAIL FORFEITURE SET ASIDE OR REMITTED?

SHOULD THIS CASE BE REMANDED TO THE COURT BELOW WITH DIRECTION TO REMIT BAIL FORFEITURE IN FAVOR OF APPELLANTS?

SHOULD THE SUPERIOR COURT EXPRESSLY OVERRULE [*FLEMING, SUPRA*] AND *COMMONWEALTH V. MROZEK*, 703 A.2d 1052 (Pa.Super.1997), TO THE EXTENT THEY HAVE NOT BEEN IMPLIEDLY OVERRULED BY *MAYFIELD, SUPRA?*

(Appellants' Brief at 7).

¶ 4 The relevant standard of review in cases involving a court's decision to grant or deny remission of bond forfeiture is as follows:

> [T]he decision to allow or deny a remission of bail forfeiture lies within the sound discretion of the trial court. Accordingly, our review is limited to [a] determination of whether the court abused its discretion in refusing to vacate the underlying forfeiture order. To establish such an abuse, the aggrieved party must show that the court misapplied the law, exercised manifestly unreasonable judgment, or acted on the basis of bias, partiality, or ill-will to that party's detriment.

*Mayfield, supra* at 465 (internal citations omitted). "If a trial court erred in its application of the law, an appellate court will correct the error." *Commonwealth v. Horce,* 726 A.2d 1067, 1068 (Pa.Super.1999). "Our scope of review on questions of law is plenary." *Id.*

¶ 5 Appellants aver they actively and substantially participated in the search for Hernandez, whereas police efforts did not bring about his apprehension. As a result, Appellants claim the court should have proceeded directly to the "mandatory" consideration of the three equitable factors set forth in *Mayfield.* Instead, Appellants protest the court erred when it considered as a "threshold inquiry" whether Appellants' efforts had a substantial impact on Hernandez's apprehension and return. Appellants suggest this Court in *Mayfield* impliedly overruled the prior case law on which the trial court relied. Appellants further insist the trial court would have set aside or remitted the forfeited bail if only it had applied the *Mayfield* factors. Appellants conclude the trial court erred as a matter of law when it denied their petition without analyzing the case pursuant to the *Mayfield* factors and insist this Court should reverse and remand the matter to the trial court with directions to set aside or remit bail forfeiture in their favor. We disagree.

¶ 6 "Bail has long been recognized as a procedure whereby an individual defendant provides a form of collateral in exchange for the defendant's release from custody; it secures his future appearance and other requirements of his bond...." *Commonwealth v. Chopak,* 532 Pa. 227, 238, 615 A.2d 696, 702 (1992) (internal citations omitted). Rule 526 of the Pennsylvania Rules of Criminal Procedure sets forth in pertinent part the conditions of a bail bond that apply in every case as follows:

### Rule 526. Conditions of Bail Bond

(A) In every case in which a defendant is released on bail, the conditions of the bail **shall** be that the defendant will:

(1) appear at all times required until full and final disposition of the case;

(2) obey all further orders of the bail authority;

(3) give written notice to the bail authority, the clerk of courts, the district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change;

(4) neither do, nor cause to be done, nor permit to be done on his or her behalf, any act proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S.A. §§ 4952, 4953; and

(5) refrain from criminal activity.

Pa.R.Crim.P. 526(A)(1)-(5) (emphasis added). The rule requires imposition of these conditions in every criminal case involving release of a defendant on bail. *See id. Comment.* Under Rule 526, the court may impose additional conditions of release pursuant to Rules 524 (Types of Release on Bail), 527 (Nonmonetary Conditions of Release on Bail), and 528 (Monetary Condition of Release on Bail). *Id.*

¶ 7 Upon a defendant's violation of any bail condition, under Pennsylvania law the bail **may** be subject to forfeiture. Pa. R.Crim.P. 536. Rule 536 of the Pennsylvania Rules of Criminal Procedure states in relevant part:

**Rule 536. Procedures Upon Violation of Conditions: Revocation of Release and Forfeiture; Bail Pieces; Exoneration of Surety**

*Text effective until Aug. 1, 2005.*

**(A) Sanctions**

\* \* \*

(2) *Forfeiture*

(a) When a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority **may** order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing.

\* \* \*

(d) The bail authority **may** direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the forfeiture order.

Pa.R.Crim.P. 536(A)(2)(a), (d) (emphasis added to highlight the discretionary nature of the rule).

■ ¶ 8 "Bail forfeiture is a process whereby an individual defendant surrenders part or all of his bond and is appropriate when he breaches a condition of his bail." *Chopak, supra* at 240 n. 7, 615 A.2d at 703 n. 7. Upon forfeiture, the money deposited to secure the defendant's appearance or compliance with the conditions of the bail bond technically becomes the property of the county. Pa.R.Crim.P. 536(A)(2)(e). However, the bail bond remains subject to exoneration, set-aside, or remission by the court. Pa.R.Crim.P. 536(C).

■ ¶ 9 "Remission of forfeitures is a practice calculated to encourage bondsman to seek actively the return of absent defendants." *Fleming, supra* at 1131 (citing *Commonwealth v. Reeher,* 245 Pa.Super. 282, 369 A.2d 404, 406 (1976)). "For this reason, the results of a bondsman's efforts as well as the extent of these efforts are prime considerations in the determination of the amount of remission." *Id.* "[T]his is precisely the undertaking which every bondsman implicitly agrees to guarantee." *Id.* A hearing is required on a bail bondsman's request for remission of forfeited money. *Commonwealth v. No-*

*lan,* 288 Pa.Super. 484, 432 A.2d 616 (1981).

> [A] hearing is necessary...so that the court may have before it evidence of the extent of the appellant's participation in the return of the defendants, ..., and any other relevant evidence appellant may produce which may properly guide the [trial court] in its future decision as to whether to return any portion of the forfeited bonds...involved.

*Id.* (citing *Commonwealth v. Ball,* 228 Pa.Super. 222, 323 A.2d 8 (1974)). Nevertheless, "Mere participation in the search for the defendant is not enough. The apprehension or return of the defendant must either be effected by the efforts of the bondsman or [those efforts must] **at least have a substantial impact** on his apprehension and return." *Fleming, supra* at 1131 (emphasis in original).

■ ¶ 10 "When a defendant breaches a bail bond without a justifiable excuse, and the government is prejudiced in any manner, the forfeiture should be enforced unless justice requires otherwise." *Mayfield, supra* at 468; Pa. R.Crim.P. 536(A)(2)(d). Whether justice requires enforcement of the forfeiture order depends on the circumstances of the case as viewed under the following equitable considerations:

> 1) the willfulness of the defendant's breach of the bond,
>
> 2) the cost, inconvenience and prejudice suffered by the government, and
>
> 3) any explanation or mitigating factors [affecting the case].

*Id.* (citations omitted). These equitable considerations were first introduced in the context of federal law and the federal rules concerning bail forfeiture, currently controlled by Federal Rule of Criminal Procedure Rule 46:

**Rule 46. Release from Custody; Supervising Detention**

\* \* \*

**(f) Bail Forfeiture.**

**(1) Declaration.** The court must declare the bail forfeited if a condition of the bond is breached.

**(2) Setting Aside.** The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if:

> **(A)** the surety later surrenders into custody the person released on the surety's appearance bond; or
>
> **(B)** it appears that justice does not require bail forfeiture.

**(3) Enforcement.**

> **(A)** Default Judgment and Execution. If it does not set aside a bail forfeiture, the court must, upon the government's motion, enter a default judgment.
>
> **(B)** Jurisdiction and Service. By entering into a bond, each surety submits to the district court's jurisdiction and irrevocably appoints the district clerk as its agent to receive service of any filings affecting its liability.
>
> **(C)** Motion to Enforce. The court may, upon the government's motion, enforce the surety's liability without an independent action. The government must serve any motion, and notice as the court prescribes, on the district clerk. If so served, the clerk must promptly mail a copy to the surety at its last known address.

**(4) Remission.** After entering a judgment under Rule 46(f)(3), the court may remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2).

**(g) Exoneration.** The court must exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture. The court must exonerate a surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody.

Fed.R.Crim.P. 46(f), (g). Under federal law, bail forfeiture is mandatory in the event of a breach of a bond condition. Fed.R.Crim.P. 46(f)(1); *U.S. v. Ciotti*, 579 F.Supp. 276 (W.D.Pa.1984). "As evidenced by the use of the word ["must"] in subsection (1) and "may" in subsection (2), a district court must declare a forfeiture if a defendant breaches a condition of a bond, but it is within the court's discretion to set aside the forfeiture and return the money." *Id.* at 277. Consequently, *Ciotti* applied three factors to assist courts in deciding whether to set aside or remit bail forfeiture after balancing the equities of the case. *Id.* These equitable considerations in bail forfeiture cases are part of Pennsylvania jurisprudence as well. *See, e.g., Chopak, supra; Commonwealth v. McDonald,* 476 Pa. 217, 382 A.2d 124 (1978); *Mayfield, supra; Mrozek, supra; Commonwealth v. Atkins,* 434 Pa.Super. 559, 644 A.2d 751 (1994); *Commonwealth v. Jones,* 286 Pa.Super. 507, 429 A.2d 436 (1981). Further, *Mrozek* states: "In *Atkins, supra,* this Court found the above-described factors...helpful in determining whether a remittance was appropriate." *Mrozek, supra* at 1054.

¶ 11 *Mayfield,* however, was the first case to suggest equitable considerations in bail forfeiture matters were mandatory, because they are mandatory in federal court. The *Mayfield* Court endorsed the factors enumerated in *Ciotti* as follows:

We note that the language the court used is both mandatory ("must look at several factors"), and conjunctive ("and"). Although this language of the district court does not control our disposition, we do find it persuasive and therefore reaffirm its application to claims for remission of bail forfeiture regardless of the breach of bail condition from which they arise.

*Mayfield, supra* at 468 (internal citations omitted). In support of their argument for exoneration, set-aside or remission of the bail forfeiture, Appellants rely on this "mandatory" language in *Mayfield, supra* to suggest the trial court committed reversible error.

¶ 12 In *Mayfield,* Capital Bonding Corporation ("Capital") posted Mayfield's bail. A mandatory condition of Mayfield's release required him to remain arrest free. Upon release, Mayfield assaulted his paramour. The police arrested Mayfield after a neighbor's call. As a result of Mayfield's violation of the release condition, the trial court ordered the bond forfeited. Capital filed a petition to vacate the forfeiture on the ground that a corporate surety posting an appearance bond is not a guarantor of a defendant's behavior and forfeiture is improper when the defendant has not yet been convicted of a crime. The court entered an order denying Capital's petition.

¶ 13 On appeal, this Court first observed that the trial court had not considered any of the *Ciotti* factors before denying Capital's petition for bail remission. The *Mayfield* Court then proceeded to examine the record in light of the *Ciotti* three-factor test. Initially, the Court confirmed record evidence that Mayfield's arrest while on bail resulted from willful conduct. However, the Court was unable to confirm in the record any evidence to establish the "cost, inconvenience and prejudice suffered by the government" resulting from Mayfield's arrest. *Mayfield, supra* at 468. The Court said: "In the absence of material evidence, we can only conclude that any

such cost, inconvenience, or prejudice was no more than nominal." *Id.* This Court further reasoned: "**Unlike the usual disappearance of the defendant following a failure to appear, Mayfield's arrest did not require substantial investigative resources and did not require a delay in disposition of the underlying charges.**" *Id.* at 468 (emphasis added). This Court held:

> In the absence of at least some demonstrated detriment to Montour County, the Commonwealth, or the trial court, we conclude, [that] as a matter of law, the record fails to establish a legally cognizable basis for the total forfeiture the trial court ordered.

*Id.* at 469. Because the second *Ciotti* factor was not met, this Court reversed, remanded, and directed the trial court to remit forfeiture in favor of Capital.

■ ¶ 14 Significantly, the *Mayfield* Court did not hold that a court's failure to consider the equitable factors of *Ciotti* constituted *per se* reversible error. To the contrary, the Court directly assessed the evidence of record in light of these factors. Accordingly, we reject Appellants' suggestion that the trial court's failure to consider the *Ciotti* factors requires automatic reversal.[3] Instead, we will analyze the present case as this Court did in *Mayfield.*

¶ 15 Initially, we distinguish *Mayfield* from the present case. Mayfield violated his bail agreement when he was arrested for assaulting his paramour. His apprehension required no investigative work whatsoever on the part of the bondsmen or the Commonwealth. Mayfield was immediately apprehended and there is no evidence that the breach of his bail bond delayed disposition in his underlying charges. Mayfield was not a fugitive.

¶ 16 In the instant case, Hernandez failed to appear at a scheduled hearing and was declared a fugitive. By virtue of his fugitive status, Hernandez rendered his bail subject to forfeiture. The evidence suggests Hernandez remained in Northampton County for some time. Meanwhile, Appellants' unsuccessful efforts included interviewing an informant, speaking with employees of local bars and restaurants, calling girlfriends of Hernandez, conducting telephone searches, and performing basic surveillance. Although the record indicates Appellants made efforts to locate and apprehend Hernandez, Appellants' efforts did not have any impact on Hernandez's ultimate capture. *See Mrozek, supra.*

¶ 17 Hernandez was apprehended independent of the bondsmen's efforts. Hernandez was taken into custody in York County on a detainer from Northampton County, after he walked into a hospital because he needed medical treatment for his gunshot wounds and a broken bone. Upon intake at the hospital, Hernandez gave his real name. The NCIC database identified Hernandez as a fugitive. The Northampton County Sheriff's Depart-

---

3. Nevertheless, courts should consider these factors when deciding whether to set aside or remit bail forfeiture, in addition to the extent and result of the bondsmen's efforts. *See McDonald, supra* (allowing return of bail where defendant failed to appear for trial because he had been convicted on unrelated charges and was incarcerated in federal prison at time of trial); *Mayfield, supra; Atkins, supra* (allowing remission of bail forfeiture; defendant's failure to appear was not willful where he was being held by authorities in another state when his case was called to trial). If there are mitigating factors, the investigative cost to the Commonwealth is slight, or the disposition of the underlying charges is not delayed, the equities of the case might require remission of the bail forfeiture. See Pa.R.Crim.P. 536(A)(2)(d) (stating: "The bail authority **may** direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the forfeiture order").

ment transported Hernandez back to Northampton County. Prior to Hernandez's apprehension, the Northampton County Sheriff's Department posted his picture in the paper as "fugitive of the week." After his arrest, the Northampton County Sheriff's Department communicated with York County authorities and transported Hernandez from York County to Northampton County. The initial question here is not whether Appellants made any effort to recover Hernandez, but whether Appellants' efforts had a substantial impact on his return. *See Mrozek, supra; Fleming, supra.* We agree with the trial court that Appellants' efforts had no bearing on Hernandez's capture.

■ ¶ 18 The trial court, however, did not conduct any analysis beyond the extent and result of Appellants' efforts. Applying the *Ciotti/Mayfield* factors, we first note Hernandez failed to appear at his hearing on October 21, 2003, and fled Northampton County sometime after local authorities posted his picture in the paper as "fugitive of the week." Absent any justifiable excuse, Hernandez's failure to appear was willful. *See Mayfield, supra.* Additionally, the Commonwealth was prejudiced by Hernandez's disappearance, which delayed the disposition of his underlying charges. The Commonwealth spent money and manpower to recapture Hernandez, including posting his picture in the paper as "fugitive of the week," communicating with York County authorities after his location in the NCIC, transporting Hernandez from York County to Northampton County, and other costs associated with having a fugitive at large. In short, the cost, inconvenience, and prejudice to the Commonwealth in the present case were notable. Finally, no other mitigating factors were presented in this case to justify remission of the bail forfeiture. Thus, we conclude Appellants were not entitled to

the relief they requested under the *Ciotti/Mayfield* three-factor test.

¶ 19 Based upon the foregoing, we affirm the trial court's decision, albeit on additional grounds. *See Commonwealth v. Beck,* 848 A.2d 987 (Pa.Super.2004) (stating appellate court may affirm order of trial court on any basis if decision is correct); *Commonwealth v. O'Brian,* 811 A.2d 1068 (Pa.Super.2002) (stating where trial court has reached correct result, its order will be sustained if it can be sustained for any reason).

¶ 20 Order affirmed.