COMMONWEALTH of Pennsylvania, Appellee

v.

Levar RILEY.

Appeal of Lexington National Insurance Corporation.

Commonwealth of Pennsylvania, Appellee

v.

Levar Andrew Riley.

Appeal of Lexington National Insurance Corporation.

Superior Court of Pennsylvania.

Argued Oct. 24, 2007.
Filed March 7, 2008.
Reargument Denied May 16, 2008.

David B. Cercone, Pittsburgh, for appellant.

Russell Montgomery, Asst. Dist. Atty., Hollidaysburg, for the Com., appellee.

BEFORE: MUSMANNO, ORIE MELVIN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Lexington National Insurance Corporation, appeals from an order entered in the Blair County Court of Common Pleas forfeiting $25,000 of a surety bond posted on behalf of Levar Andrew Riley. Because we find that the Commonwealth was not prejudiced by Riley's breach of the bail conditions and accordingly that the forfeiture was not warranted, we reverse and remand.

¶ 2 On July 19, 2005, a criminal complaint was filed, charging Riley with criminal attempt, conspiracy, solicitation, and sale or transfer of a firearm. Bail was set at $75,000, which was posted as a surety bond by Appellant.[1] After the bond was posted, Riley was released on August 17, 2005. Riley waived formal arraignment and requested a trial by jury. Although the trial was originally scheduled for January 2006, a number of continuances were granted and the trial date was ultimately set for June 5, 2006.

¶ 3 On May 11, 2006, the Commonwealth moved to revoke the bail/surety bond, asserting that Riley had been arrested on April 10, 2006 for a series of drug-related incidents,[2] and thus had violated his bail conditions by engaging in further criminal activity. A hearing was set for June 2nd. However, while the motion to revoke bail was served on Appellant by certified mail on May 15th, the mailed copy of the motion did not include the June 2nd hearing date, and the Commonwealth did not attempt to further advise as to when the hearing was scheduled. On May 31st, a jury was selected for the charges related to the July 19th complaint, and Riley was present. At the June 2nd hearing[3] on the bail revocation, the trial court granted the Commonwealth's motion for revocation, and stayed the forfeiture for twenty days

---

1. Appellant also filed a power of attorney with the bond, which stated that the authority of the attorney-in-fact who posted the bond was limited to appearance bonds and could not be construed to guarantee the Defendant's future lawful conduct.

2. Defendant was granted bail on those new charges and released on bond.

3. Riley was not present at this hearing.

pending notice to Appellant pursuant to Pa.R.Crim.P. 536(A)(2)(c).

¶ 4 The trial on the original charges began on June 5, 2006. Although Riley did not appear, he was tried *in absentia* and found guilty. Meanwhile, on June 9th, Appellant received the court order revoking bail and immediately took steps to locate and apprehend Riley. Ken Dyson, a licensed surety agent employed by Appellant, contacted Riley's family and traveled to Altoona on June 19th to find him. After a failed attempt to persuade Riley to turn himself in, Dyson apprehended him and turned him over to the Altoona Police Department on June 22nd, thirteen days after receiving notice that he failed to appear at trial, and within the 20 day stay period following the June 2nd revocation order. Riley was sentenced on August 14, 2006, to an aggregate term of 15 to 40 months' imprisonment. In an order filed October 6th, the trial court remitted $50,000 of the total bail to Appellant and forfeited $25,000 to Blair County. Appellant moved for reconsideration, and following a hearing on January 11th the trial court denied the motion in an order of January 31st. Appellant filed a timely appeal with this Court on February 28th.

■ ¶ 5 Appellant asserts that the Commonwealth failed to provide evidence that the Riley's absence between June 5th and June 22nd caused such cost, inconvenience, prejudice, or delay that a forfeiture of the surety bond was warranted. It argues that Riley was timely tried, convicted in absentia, and sentenced, noting that its agent located and apprehended Riley only 13 days after it received notice of his absence, and thus the interests of justice require that the bond be fully remitted.

¶ 6 The Commonwealth responds that the bond can and should be forfeited because Riley breached the conditions of the bond by engaging in criminal activity during his release. Further, the government asserts that it did offer sufficient evidence to establish a substantial cost, inconvenience, and prejudice in "prosecuting the [D]efendant on the new charges." (Commonwealth's Brief at 4.) For the reasons explained herein, we cannot agree with the Commonwealth.

■ ¶ 7 Our standard of review in bail forfeiture cases is well settled:

> The decision to allow or deny a remission of bail forfeiture lies within the sound discretion of the trial court. Accordingly, our review is limited to a determination of whether the court abused its discretion in refusing to vacate the underlying forfeiture order. To establish such an abuse, the aggrieved party must show that the court misapplied the law, exercised manifestly unreasonable judgment, or acted on the basis of bias, partiality, or ill-will to that party's detriment. If a trial court erred in its application of the law, an appellate court will correct the error. Our scope of review on questions of law is plenary.

*Commonwealth v. Hernandez,* 886 A.2d 231, 235 (Pa.Super.2005), appeal denied, 587 Pa. 720, 899 A.2d 1122 (2006) (quotations and citations omitted). The Pennsylvania Rules of Criminal Procedure address the mandatory conditions of bail, providing:

### Rule 526. Conditions of Bail Bond

(A) In every case in which a defendant is released on bail, the conditions of the bail bond shall be that the defendant will:

(1) appear at all times required until full and final disposition of the case;

(2) obey all further orders of the bail authority;

(3) give written notice to the bail authority, the clerk of courts, the

district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change;

(4) neither do, nor cause to be done, nor permit to be done on his or her behalf, any act proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S. §§ 4952, 4953; and

(5) refrain from criminal activity.

(B) If the bail authority determines that it is necessary to impose conditions of release in addition to the conditions required in paragraph (A) to ensure the defendant's appearance and compliance, the bail authority may impose such conditions as provided in Rules 524, 527, and 528.

(C) The bail authority shall set forth in the bail bond all conditions of release imposed pursuant to this rule.

Pa.R.Crim.P. 526. The Rules also provide for forfeiture proceedings, stating in relevant part:

**Rule 536. Procedures Upon Violation of Conditions: Revocation of Release and Forfeiture;**

(A)(2) *Forfeiture*

(a) When a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing.

(b) Written notice of the forfeiture shall be given to the defendant and any surety, either personally or by both first class and certified mail at the defendant's and the surety's last known addresses.

(c) The forfeiture shall not be executed until 20 days after notice of the forfeiture order.

(d) The bail authority may direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the forfeiture order.

Pa.R.Crim.P. 536(A)(2). In *Commonwealth v. Mayfield*, 827 A.2d 462 (Pa.Super.2003), this Court made manifest the equitable considerations relevant to bail forfeitures, and adopted a three-pronged test:

When a defendant breaches a bail bond, without a justifiable excuse, and the government is prejudiced in any manner, the forfeiture should be enforced unless justice requires otherwise. When considering whether or not justice requires the enforcement of a forfeiture, a court must look at several factors, including: 1) the willfulness of the defendant's breach of the bond, 2) the cost, inconvenience and prejudice suffered by the government, and 3) any explanation or mitigating factors.

*Id.* at 468 (citing *United States v. Ciotti*, 579 F.Supp. 276, 278 (W.D.Pa.1984)).

¶ 8 Later, in *Hernandez*, this Court considered this *Mayfield* test in light of the law and policy surrounding bail forfeitures:

Bail forfeiture is a process whereby an individual defendant surrenders part or all of his bond and is appropriate when he breaches a condition of his bail. Upon forfeiture, the money deposited to secure the defendant's appearance or compliance with the conditions of the bail bond technically becomes the property of the county. Pa.R.Crim.P. 536(A)(2)(e). However, the bail bond remains subject to exoneration, set-aside, or remission by the court. Pa. R.Crim.P. 536(C).

Remission of forfeitures is a practice calculated to encourage bondsman [sic] to seek actively the return of absent defendants. For this reason, the results of a bondsman's efforts as well as the extent of these efforts are prime considerations in the determination of the amount of remission. This is precisely the undertaking which every bondsman implicitly agrees to guarantee. A hearing is required on a bail bondsman's request for remission of forfeited money.

A hearing is necessary so that the court may have before it evidence of the extent of the appellant's participation in the return of the defendants, and any other relevant evidence appellant may produce which may properly guide the trial court in its future decision as to whether to return any portion of the forfeited bonds involved.

Nevertheless, mere participation in the search for the defendant is not enough. The apprehension or return of the defendant must either be effected by the efforts of the bondsman or those efforts must **at least have a substantial impact** on his apprehension and return.

*Hernandez, supra* at 236–237 (some citations omitted).

¶ 9 In *Mayfield, supra,* this Court examined a situation similar to that presented here in that after the appellant was released on bail he engaged in criminal activity, in that instance by striking his girlfriend. *Id.* at 464. Following his arrest, the Commonwealth moved to revoke his bail, asserting that the simple assault constituted a violation of his bail conditions. *Id.* The court granted the motion. *Id.* On appeal, this Court determined that:

[T]he language of [Pa.R.Crim.P. 536] does not limit application of forfeiture merely to failure of the defendant to appear. Rather, the Rule allows for-feiture for any violation subject to remission "if justice does not require the full enforcement of the forfeiture order." *See* Pa.R.Crim.P. 536(A)(2)(d). Thus, Rule 536, when considered in conjunction with Rule 526, *infra,* would appear to allow forfeiture for a defendant's failure to appear, to obey orders of the bail authority, to give timely written notice of a change of address, and to refrain from criminal activity generally.

*Id.* at 467. However, the *Mayfield* Court held that "a trial court's discretion to grant bail forfeiture was not unbounded," and analyzed the forfeiture under the three part conjunctive standard cited *supra.* We concluded that the Commonwealth failed to present evidence of significant prejudice, and thus did not meet the second prong:

In the absence of material evidence, we can only conclude that any such cost, inconvenience or prejudice was no more than nominal. Police arrested [the appellant] promptly following his infraction and he was recommitted to the Montour County jail, the same facility in which he had been housed prior to his bail-release. Unlike the usual disappearance of the defendant following a failure to appear, [the appellant's] arrest did not require substantial investigative resources and did not require a delay in disposition of the underlying charges. In the absence of at least some demonstrated detriment to Montour County, the Commonwealth, or the trial court, we conclude, as a matter of law, that the record fails to establish a legally cognizable basis for the total forfeiture the trial court ordered.

*Id.* at 468–69.

¶ 10 Similarly here, there was no showing of any particular costs incurred by the Commonwealth. A deputy district attor-

ney testified that she spent some time working on the new drug charges of April 2006, but there was no testimony as to any cost related to the initial charges for which Appellant had posted the bond. The purported costs associated with filing an information and other aspects of the new charges were nothing more than the "nominal" expenses that existed in *Mayfield*, in which the government also argued that new criminal activity was grounds for revocation. Further, the Commonwealth incurred no costs related to the actual recapture of Riley, as Appellant immediately undertook to locate him once it learned of his absence, took him into custody, and returned him to the Commonwealth. This response is precisely what the threat of forfeiture is designed to encourage, and Appellant responded effectively, completing recovery of Riley within the mandatory 20 day stay period. While Riley did indeed fail to appear for his trial, he was nonetheless tried *in absentia* on the scheduled date; there was no delay in any proceedings related to the charges for which Appellant had posted bail.

¶ 11 Additionally, the Commonwealth states that Riley was "wreaking havoc" in Blair County following his initial release, referring to the new drug charges. (Commonwealth Brief at 2). This characterization is disingenuous however; rather than taking Riley into custody and revoking bail when the information about his putative drug trade surfaced, the Commonwealth waited, and utilized Riley's drug transactions to secure a large drug forfeiture and "get [a] substantial amount [of drugs] off the street." (N.T. Hearing, 9/29/06 at 70). The Commonwealth admits that Riley's bail status was known to police prior to the controlled buys conducted in March. Norman Young, the Altoona police officer [4] who coordinated the controlled buys, testified that he was aware of Riley's status before any of the buys were made. (*Id.* at 67). Thus, the Commonwealth had the option to revoke Riley's bail before he had the opportunity to "wreak" the alleged "havoc." Instead, the drug transactions which the Commonwealth characterizes as "havoc" were three separate controlled buys made despite its awareness of Riley's bail status. While the Commonwealth could have moved to revoke bail at any time after it learned of the breach,[5] it elected instead to use Riley's activity as an opportunity to further the law enforcement goal of discovering and capturing additional drugs.

¶ 12 In contrast to the facts here, in *Hernandez, supra*, this Court held that forfeiture was proper when the defendant was "apprehended independent of the bondsman's efforts." *Id.* at 239. Thus, there the Commonwealth was prejudiced by the disappearance itself, as evidenced by the costs specifically related to the defendant's failure to appear and the costs of his recapture. *Id.* at 240 (holding that the money and manpower spent to recover defendant demonstrated prejudice). In finding the breech willful, that the Commonwealth was prejudiced by recapture

---

4. Mr. Young was an Altoona police officer at the time of the relevant drug buy operation; he was employed by the Attorney General's office at the time of the hearing.

5. Pa.R.Crim.P. 536(A)(1)(a)-(b) provides:
   **(A) Sanctions**
   (1) *Revocation of Release*
      (a) A person who violates a condition of the bail bond is subject to a revocation of release and/or a change in the conditions of the bail bond by the bail authority.
      (b) When a violation of a condition occurs, the bail authority may issue a bench warrant for the defendant's arrest. When the bench warrant is executed, the bench warrant proceedings shall be conducted pursuant to Rule 150.

costs, and that there were no mitigating circumstances, the *Hernandez* Court held that forfeiture was warranted.

¶ 13 Here, there was no similar showing of prejudice related to the recapture. Thus, while the first element of the *Mayfield* test is met here, as the breach is patently willful,[6] the second element is not. Although we recognize that the alleged breach in this case is the post-release criminal activity, our law has clearly established that the purpose of bail forfeiture is to encourage bondsmen to act so as to prevent additional recapture costs for the Commonwealth. *See Hernandez, supra.* Here, the Commonwealth has not shown any cost specific to Riley's failure to appear since he was timely tried, convicted, and sentenced, and Appellant achieved a speedy apprehension and return of him once it knew of his disappearance. The evidence offered by the Commonwealth as to the costs related to the additional charges—the investigation, police hours and prosecution hours—refers to costs incurred as a result of the law enforcement decision to use Riley's activity as an opportunity to seize a greater quantity of drugs. Further, these are no more than the "nominal" costs associated with any new criminal activity and are not sufficient to meet the cost/prejudice prong of the *Mayfield* test. *See Mayfield, supra* at 468.

¶ 14 Additionally, consideration of the record in light of the third prong, analysis of mitigating circumstances, reveals that such circumstances are present and relevant here. Appellant acted quickly and decisively to secure Riley's capture. As remission of forfeitures is specifically intended to encourage bondsmen to spare the Commonwealth the expenses associated with recapturing a fugitive, denying

remission will not serve this interest. *See Hernandez, supra.* Appellant acted reasonably and effectively. Therefore, to deny full remission when the Commonwealth was spared the cost and difficulty of capturing Riley will not serve to ensure that bondsmen continue to take responsibility for their bonds. *Id.*

¶ 15 Order reversed. Remanded with direction to remit entire bail forfeiture in favor of Appellant. Jurisdiction relinquished.

---

**6.** "Absent any justifiable excuse, [a defendant's] failure to appear [is] willful." *Her-nandez, supra* at 240.