**COMMONWEALTH of Pennsylvania**

v.

**Justin Lamar CULVER.**

**Appeal of John T. Robinson, A Duly Authorized Agent and Attorney–in–Fact of Evergreen National Indemnity Company.**

**Commonwealth of Pennsylvania**

v.

**Justin Lamar Culver.**

**Appeal of John Wasco, A Duly Authorized Agent and Attorney–in–Fact for Seneca Insurance Company.**

Superior Court of Pennsylvania.

Argued April 17, 2012.
Filed June 7, 2012.

Patrick J. Reilly, Allentown, for Robinson, appellant.

James A. Swetz, Stroudsburg, for Wasco, appellant.

Raymond J. Tokin, Assistant District Attorney, Milford, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, PANELLA, DONOHUE, ALLEN, MUNDY, OLSON, OTT, and WECHT, JJ.

OPINION BY MUNDY, J.

Appellants, Evergreen National Indemnity Company, through its agent and attorney-in-fact, John T. Robinson (Evergreen), and Seneca Insurance Company, through its agent and attorney-in-fact, John Wasco (Seneca), appeal from the order entered October 21, 2010, denying their respective

petitions to set aside or remit forfeiture of Justin Lamar Culver's (Defendant's) bail and release each as surety. We reverse and remand.

Our review of the certified records in these cases reveals the following factual and procedural history. Defendant was charged on February 2, 2007, with one count each of burglary, criminal trespass, criminal mischief, and attempt to commit theft by unlawful taking.[1] At Defendant's preliminary arraignment that same day, the Magisterial District Judge conditioned Defendant's release on payment of $25,000.00 bail. On February 9, 2007, Defendant's bail was posted by Seneca as surety. These charges were bound over to the Court of Common Pleas at Docket No. CR–0000062–2007.

On March 26, 2007, Defendant was charged in a new criminal complaint with false imprisonment, terroristic threats, simple assault, and harassment.[2] At his preliminary arraignment for these charges, the Magisterial District Judge conditioned Defendant's release on payment of $100,000.00 bail. The charges were bound over to the Court of Common Pleas at Docket No. CR–0000119–2007. On May 7, 2007, Defendant filed a petition for bail reduction. After a hearing, the trial court denied the petition. On June 14, 2007, Evergreen posted Defendant's $100,000.00 bail as surety at Docket No. CR–0000119–2007.

Accordingly, Defendant was released and remained subject to the conditions of bail set at each docket number. On September 10, 2007, Defendant was arrested and charged with second-degree murder, two counts of robbery, burglary, conspiracy to commit robbery, conspiracy to commit burglary, firearms not to be carried without a license, and possession of firearm prohibited, stemming from a home invasion perpetrated on August 24, 2007.[3] On September 11, 2007, upon oral motion of the Commonwealth, the trial court revoked Defendant's bail at both Docket No. CR–0000062–2007 and Docket No. CR–0000119–2007. The case at Docket No. CR–0000062–2007, and the case at Docket No. CR0000119–2007 were then the subject of numerous continuances.[4]

Defendant was convicted by a jury of second-degree murder, conspiracy, and the other charges at Docket No. CR–0000298–2007 on March 18, 2009. On March 19, 2009, the trial court granted a Commonwealth motion for forfeiture of Defendant's bail at both Docket No. CR–0000062–2007 and Docket No. CR–0000119–2007. On March 31, 2009, Seneca filed a petition to vacate the bail forfeiture and release surety. Similarly, on April 6, 2009, Evergreen filed a petition to set aside or in the alternative, remit forfeiture and release surety. At a hearing held on May 21, 2009, all parties proposed to submit a stipulation of facts and briefs to the trial court in lieu of testimony and oral arguments. N.T., 5/21/09, at 2–4. The parties' stipulation was filed on June 22, 2009.[5] After review-

1. 18 Pa.C.S.A. §§ 5502(a), 3304(a)(5), 3503(a)(1)(ii), and 901(a), respectively.

2. 18 Pa.C.S.A. §§ 2903(a), 2706(a)(1), 2701(a)(1), and 2709(a)(1), respectively.

3. 18 Pa.C.S.A. §§ 2502(b), 3701, 3502(a), 903, 903, 6106(a)(1), and 6105(a)(1), respectively. These charges were bound over to the trial court at Docket No. CR–0000298–2007. One

of Defendant's co-conspirators, Marquis Keeys, was tried separately.

4. Defendant was eventually convicted of all the charges in the case at Docket No. CR–0000062–2007, following a jury trial on November 12, 2009. The Commonwealth entered a *nolle prosequi* in the case at Docket No. CR0000119–2007 on November 16, 2009.

5. The stipulation provided as follows.

ing the submissions of the parties, the trial court, by order filed October 21, 2010, denied both sureties' petitions to set aside or remit the respective bail forfeitures.

Evergreen filed a notice of appeal on November 3, 2010, and Seneca filed its notice of appeal on November 5, 2010.[6] A panel of this Court reviewed both appeals and determined in each that the trial court had abused its discretion and misinterpreted the law by refusing to set aside the forfeitures and to release the sureties. Thereafter, the Commonwealth filed an application for reargument with this Court. The full Court subsequently granted the Commonwealth's application, and the panel's decisions were withdrawn. The cases were then consolidated for reargument before this Court *en banc*.

Evergreen raises two questions for our review.

1. Are the 'costs' alleged by the Commonwealth the type of 'costs, inconvenience and prejudice' contemplated by the Superior Court in *Commonwealth v. Mayfield*, 827 A.2[d] 462 (Pa.Super.2003) and *Commonwealth v. Riley*, 946 A.2d 696 (Pa.Super.2008)?

2. Because the Commonwealth suffered no cognizable 'cost, inconvenience or prejudice' as a result of Defendant's breach of bail bond, is [Evergreen] entitled to have the forfeiture of $100,000.00 bail bond in question set aside?

Evergreen's Refiled Brief at 7.

Seneca poses the issue in the following manner.

Whether the Court erred as a matter of law and abused its discretion in ordering bail forfeiture against Seneca where the Commonwealth did not incur any cost or loss in apprehending [Defendant] or any prejudice in the prosecution of [Defendant] for the underlying offense for which the bail was posted?

Seneca's Supplemental Brief at 4.

■■■ The standard and scope of review we employ when reviewing a trial

---

*STIPULATION*

TO THE HONORABLE, THE JUDGE OF THE AFORESAID COURT:

Bruce DeSarro, Assistant District Attorney in and for the County of Pike, Commonwealth of Pennsylvania, respectfully represents that:

1. Counsel for Evergreen National Indemnity Company, Patrick Reilly, Esq., and for Seneca Insurance Company, James Swetz[,] Esq., and the Commonwealth have agreed to stipulate to several items for the factual record pertaining to the remission motions filed by [sic] with respect to the above-captioned matters.

2. The parties stipulate to the Commonwealth's request to incorporate the record of the cases of *Commonwealth v. Justin Culver* (298–2007) and *Commonwealth v. Marquis Keeys* (334–2007).

3. The parties stipulate that for the purpose of the Court's decision on remission, the Commonwealth accrued no costs in apprehending [Defendant] with respect to the above-captioned cases nor do any of the enumerated costs noted herein relate to the apprehension of [Defendant].

4. The parties agree to stipulate that the following costs were incurred by the Commonwealth and County of Pike in the cases of [Defendant] under caption 298–2007 and Marquis Keeys under caption 334–2007 as is noted in attachment "A".

5. The Attorney[s] Reilly and Swetz have been presented with this Motion and have agreed to the stipulation in separate letters which are attached.

Stipulation, 6/22/09, at 1–2. Exhibit "A", referenced in the stipulation, itemized the Commonwealth's costs relative to the new charges as follows: $8,789.85 for prosecuting Keeys, $552.50 for prosecuting Defendant, $12,797.16 for prosecuting both Keeys and Defendant, and $103,348.54 for Keeys' court appointed defense. *Id.*, Exhibit A.

6. Evergreen, Seneca, and the trial court have complied with Pa.R.A.P. 1925.

court's grant or denial of bail forfeiture remission is well settled.

> The decision to allow or deny a remission of bail forfeiture lies within the sound discretion of the trial court. Accordingly, our review is limited to a determination of whether the court abused its discretion in refusing to vacate the underlying forfeiture order. To establish such an abuse, the aggrieved party must show that the court misapplied the law, exercised manifestly unreasonable judgment, or acted on the basis of bias, partiality, or ill-will to that party's detriment. If a trial court erred in its application of the law, an appellate court will correct the error. Our scope of review on questions of law is plenary.

*Commonwealth v. Riley,* 946 A.2d 696, 698 (Pa.Super.2008), *quoting, Commonwealth v. Hernandez,* 886 A.2d 231, 235 (Pa.Super.2005), *appeal denied,* 587 Pa. 720, 899 A.2d 1122 (2006).

 Since the questions posed by Evergreen and Seneca are variant formulations of the same issue, we will address them concomitantly. As noted in the procedural summary, the parties submitted a stipulation to the trial court in lieu of testimony. Therefore, the facts underlying these appeals are not in dispute. Based on those facts, Seneca maintains that the costs advanced by the Commonwealth in the parties' stipulation cannot support a showing of prejudice where the costs were not incurred "in the prosecution of the underlying crime for which bail had been posted." Seneca's Refiled Brief at 6. "Alternatively, even if the Commonwealth suffers costs, prejudice, and inconvenience in the prosecution of the new crime, the forfeiture should be set aside if, under the facts of the case, forfeiture would not encourage bondsmen to act to prevent additional recapture costs for the Commonwealth." *Id.* In the same vein, Evergreen

maintains that the costs advanced by the Commonwealth in the stipulation cannot support a showing of prejudice where Defendant's "re-arrest on the Subsequent Charges ... did not, in fact, cause any delay in proceeding against [Defendant] on the charges in the First Case." Evergreen's Refiled Brief at 12. "While the 'costs' of apprehending a defendant who breaches the conditions of bail are directly related to the breach, the 'cost' of prosecution on new charges clearly arises out of the new charges, and not out of the breach of the condition of bail on the prior charges." *Id.* at 18. Both Evergreen and Seneca cite this Court's decisions in *Commonwealth v. Mayfield,* 827 A.2d 462 (Pa.Super.2003), and *Commonwealth v. Riley,* 946 A.2d 696 (Pa.Super.2008), as support for their positions. *See* Seneca's Refiled Brief at 8–9; Evergreen's Refiled Brief at 17–19.

The Commonwealth counters that it was prejudiced when it incurred costs "directly attributable to [Defendant's] criminal conspiracy." Commonwealth's Substituted Brief at 5. The Commonwealth urges that when the basis for the revocation of bail is the commission of new offenses, this Court's precedents in *Mayfield, supra,* and *Riley, supra,* permit forfeiture to recompense costs associated with the new offense if those costs are not nominal. *Id.* at 10.

> This Court specifically reviewed whether the new arrest of Mayfield resulted in any costs, inconvenience or prejudice. *Mayfield,* 827 A.2d at 468. Under this review, the Court noted Mayfield's new arrest did not result in the expenditure of substantial investigative resources on the new arrest. *Id.* Thus, the resulting holding that only nominal expenses resulting from the new arrest were insufficient to justify forfeiture of the entire $50,000.00 bail bond. Most importantly,

the Court did analyze the casual [sic] link between the breach of the bond and the costs associated with the arrest which formed the basis for the conclusion the Defendant did breach his conditions.

*Id.* at 11.

Thus, ... if the Commonwealth can demonstrate more that [sic] nominal costs that resulted from the Defendant's breach of his bail conditions, it is proper for a trial court to require forfeiture of the bail bond.

The failure in the logic of Evergreen and Seneca is that if costs associated with the new arrest are not cause for a bail forfeiture, there would be no reason for this Honorable Court to have analyzed the costs associates [sic] with new charges as part of the decision to require forfeiture.

*Id.*

Hence, the Commonwealth would include as prejudicial costs the full expense of trying Defendant for the new murder and conspiracy charges, as well as the full costs of prosecuting Defendant's co-conspirator in a separate trial, including the co-conspirator's court-appointed defense costs. The crux of the issue before us, therefore, is the parties' variant interpretations of our prior case law and its controlling impact on this issue. We shall next review that precedent.

Matters concerning the administration of bail are subject to the Rules of Criminal Procedure. *See* 42 Pa.C.S.A. § 5702 (providing that "all matters relating to the fixing, posting, forfeiting, exoneration and distribution of bail and recognizances shall be governed by general rules"). Pa. R.Crim.P. 526 prescribes the conditions that must accompany any release of a defendant on bail. These include, *inter alia,* to "appear at all times required" and to "refrain from criminal activity." Pa. R.Crim.P. 526(A)(1), (5). These standard conditions were duly imposed in the cases *sub judice.*

Procedures and criteria governing forfeiture are further set forth in pertinent part as follows.

**Rule 536. Procedures Upon Violation of Conditions: Revocation of Release and Forfeiture; Bail Pieces; Exoneration of Surety**

(A) Sanctions

. . .

(2) Forfeiture

(a) When a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing.

(b) Written notice of the forfeiture shall be given to the defendant and any surety, either personally or by both first class and certified mail at the defendant's and the surety's last known addresses.

(c) The forfeiture shall not be executed until 20 days after notice of the forfeiture order.

(d) The bail authority may direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the forfeiture order.

Pa.R.Crim.P. 536.

In *Mayfield, supra,* the trial court had granted the Commonwealth revocation and forfeiture of defendant's bail when he was arrested for an assault while released on bail. The trial court later denied the surety's petition for set-aside or remission. On appeal, this Court made clear that breach of conditions other than failure to appear could trigger bail forfeiture proceedings in accordance with Pa.R.Crim.P. 536. "Thus,

Rule 536, when considered in conjunction with Rule 526, ... would appear to allow forfeiture for a defendant's failure to appear, to obey orders of the bail authority, to give timely written notice of a change of address, and to refrain from criminal activity generally." *Mayfield, supra* at 467. We cautioned, however, that further inquiry was necessary when set-aside or remission is requested under subsection (d) of the Rule. *Id.* "Nevertheless, the trial court's discretion to grant bail forfeiture is not unbounded; an award of forfeiture is subject to remission 'if justice does not require the full enforcement of the forfeiture order.' *See* Pa.R.Crim.P. 536(A)(2)(d)." *Id.* The *Mayfield* Court then adopted a three-part test a trial court must employ when determining whether justice requires forfeiture in light of a request for set-aside or remission.

> When a defendant breaches a bail bond, without a justifiable excuse, and the government is prejudiced in any manner, the forfeiture should be enforced unless justice requires otherwise. When considering whether or not justice requires the enforcement of a forfeiture, a court must look at several factors, including: 1) the willfulness of the defendant's breach of the bond, 2) the cost, inconvenience and prejudice suffered by the government, and 3) any explanation or mitigating factors.

[*United States v.*] *Ciotti*, [579 F.Supp. 276, 278 (W.D.Pa.1984)] (citations omitted). We note that the language the court used is both mandatory ("must look at several factors"), and conjunctive ("and"). Although this language of the district court does not control our disposition, we do find it persuasive and therefore reaffirm its application to claims for remission of bail forfeiture **regardless of the breach of bail condition from which they arise.**

*Id.* at 468 (emphasis added).

The *Mayfield* Court then applied this test to the facts before it, holding the trial court abused its discretion in denying remission. We determined that the defendant's re-arrest supported the trial court's finding of a willful breach of the bond. However, we further determined the record did not support a finding of prejudice suffered by the Commonwealth.

> Unlike the usual disappearance of the defendant following a failure to appear, Mayfield's arrest did not require substantial investigative resources and did not require a delay in disposition of the underlying charges. In the absence of at least some demonstrated detriment to Montour County, the Commonwealth, or the trial court, we conclude, as a matter of law, that the record fails to establish a legally cognizable basis for the total forfeiture the trial court ordered.

*Id.* at 468–469.

We again addressed the application of the *Ciotti/Mayfield* test in *Commonwealth v. Hernandez,* 886 A.2d 231, 235 (Pa.Super.2005), *appeal denied,* 587 Pa. 720, 899 A.2d 1122 (2006). Therein, we held that a trial court's failure to employ the *Ciotti/Mayfield* analysis is not *per se* error where the record permits this Court to independently evaluate its applicability. *Id.* at 239. In distinguishing the case before it from the facts in *Mayfield,* the *Hernandez* Court noted that unlike Mayfield, Hernandez violated his bail by failing to appear as required and was sought thereafter on a fugitive warrant. "[T]he Commonwealth was prejudiced by Hernandez's disappearance, which delayed the disposition of his underlying charges. The Commonwealth spent money and manpower to recapture Hernandez[.]" *Id.* at 240.

In *Hernandez*, we also addressed the third prong of the *Ciotti/Mayfield* test, a review of mitigating factors. We emphasized the relation of this prong to policy concerns underlying remission of bail forfeitures. "Remission of forfeitures is a practice calculated to encourage bondsman [sic] to seek actively the return of absent defendants." *Id.* at 236, *quoting Commonwealth v. Fleming*, 336 Pa.Super. 377, 485 A.2d 1130, 1131 (1984). We ultimately held in *Hernandez* that the surety's efforts to secure the defendant's recapture did not qualify as mitigation if such efforts "did not have any impact on Hernandez's ultimate capture." *Id.* at 239.

We reaffirmed the central relevance of this policy consideration in *Riley, supra.* "Although we recognize that the alleged breach in this case is the post-release criminal activity, our law has clearly established that the purpose of bail forfeiture is to encourage bondsmen to act so as to prevent additional recapture costs for the Commonwealth." *Id.* at 702 (emphasis added). In *Riley,* the trial court revoked and forfeited the defendant's bail based on his arrest on new charges. Thereafter, upon petition of the surety, the trial court remitted two-thirds of the defendant's bail but confirmed the forfeiture of the remaining $25,000.00. On appeal by the surety, the Commonwealth argued, in *Riley,* that the forfeiture was justified based on prejudice it suffered in prosecuting the defendant on the new charge. *Id.* at 698. We disagreed.

> [T]here was no showing of any particular costs incurred by the Commonwealth. A deputy district attorney testified that she spent some time working on the new drug charges of April 2006, but there was **no testimony as to any cost related to the initial charges for which Appellant had posted the bond.** The purported costs associated with filing an information and other aspects of the new charges were nothing more than the "nominal" expenses that existed in *Mayfield,* in which the government also argued that new criminal activity was grounds for revocation. Further, the Commonwealth incurred no costs related to the actual recapture of Riley, as Appellant immediately undertook to locate him once it learned of his absence, took him into custody, and returned him to the Commonwealth. This response is precisely what the threat of forfeiture is designed to encourage. . . .

*Id.* at 700–701 (emphasis added).

> Here, the Commonwealth has **not shown any cost specific to Riley's failure to appear** since he was timely tried, convicted, and sentenced, and Appellant achieved a speedy apprehension and return of him once it knew of his disappearance. . . . Further, these are no more than the "nominal" costs **associated with any new criminal activity** and are not sufficient to meet the cost/prejudice prong of the *Mayfield* test.

*Id.* at 702 (citations omitted; emphasis added).

Instantly, the trial court found *Riley* inapplicable to the cases *sub judice.*

> *Riley* [ ] stands for the proposition that nominal costs alone cannot form the basis of enforcing a forfeiture. The case at hand is distinguishable from *Riley,* however, in that, here, [Defendant's] criminal activity resulted in more than nominal costs to the Commonwealth. Seneca and Evergreen have in fact stipulated to substantial costs incurred by the Commonwealth. Accordingly, the holding in *Riley* is not applicable and does not require that the previously ordered forfeiture be set aside or remitted.

Trial Court Opinion, 10/21/10, at 4–5.

Upon close review of the parties' stipulation, we conclude that *Riley* is controlling

and that the Commonwealth and trial court construe the holding in *Riley* too narrowly. The trial court and Commonwealth focus solely on the conclusion of the *Riley* Court that the costs asserted by the Commonwealth in that case were "nominal," thus precluding a finding of prejudice. Prior to that observation, however, we clarified in *Riley* that the costs relevant to such an inquiry were those "specific to Riley's failure to appear" and those "related to the initial charges for which Appellant had posted the bond." *Riley, supra* at 701, 702. It is the costs so clarified that the *Riley* Court determined were nominal.

As noted, the Commonwealth would have us extend as relevant costs in support of a prejudice finding, the full prosecution of Defendant for the new charge, the full cost of prosecution for a co-conspirator, and the full cost of providing court-appointed defense. The Commonwealth takes this position notwithstanding its own admission that it endured no prejudice from Defendant's absence or in connection with the underlying charges for which bail was posted. We find no support for such an extension and further determine that to do so would run contrary to the various policy considerations underlying remission of bail forfeitures.

The Commonwealth's position would essentially make Evergreen and Seneca guarantors of Defendant's law-abiding behavior while released on bail. This in turn would render the third *Ciotti/Mayfield* prong, requiring inquiry into a surety's mitigation efforts, moot and run contrary to our holding in *Mayfield* that the prongs of inquiry into the propriety of remission are "mandatory" and "conjunctive." *Mayfield, supra* at 468. The policy embraced by the third *Ciotti/Mayfield* prong, to encourage sureties to "seek actively the return of absent defendants," would be obvi-

ated. *Hernandez, supra* at 239. The Commonwealth's position would also have the deleterious effect of making sureties wary of offering bail and thus impair an accused's constitutional right to pretrial bail. If the climate for corporate sureties were to be made so difficult, an accused's access to bail options could be severely curtailed.

We bear in mind that the determination of a defendant's eligibility for bail is made by a court applying the criteria, set forth in Pa.R.Crim.P. 523, that are "relevant to the defendant's appearance or nonappearance at subsequent proceedings, or compliance or noncompliance with the conditions of the bail bond." *Id.* To make a surety a guarantor of such findings is unjust and cannot support a denial of remission under the *Ciotti/Mayfield* test.

We also note that this case is unusual in that the new charge at Docket No. CR–0000298–2007 proceeded to trial while the dispositions of the charges at Docket No. CR–0000062–2007 and Docket No. CR–0000119–2007 were postponed through numerous continuances.[7] A bail bond is valid until final disposition of a case. *See* Pa. R.Crim.P. 534. The Commonwealth's position could invite manipulation of case schedules to enhance or avoid forfeiture claims.

We do not hold that a defendant's criminal activity, while released on bail, cannot impact prejudice to the Commonwealth in recapturing that defendant or that such costs may not attach to a case bringing new charges against the defendant. Such costs are not alleged in the instant case. Here, the Commonwealth seeks recompense for normal costs of prosecution unrelated to Defendant's release status.

---

**7.** No explanation for the numerous continu-ances appears in the certified record.

For all the foregoing reasons, we determine that the trial court misapplied the law by concluding the Commonwealth, in its stipulation, had demonstrated prejudice from Defendant's breach of bail conditions. Consequently, we conclude the trial court abused its discretion in denying Evergreen and Seneca's petitions to vacate the bail forfeiture and release surety. Accordingly, we reverse the trial court's order of October 21, 2010, denying Evergreen and Seneca's petitions and remand with instructions to set aside the respective bail forfeitures and to release Evergreen and Seneca as Defendant's sureties.

Order reversed. Cases remanded with instructions. Jurisdiction relinquished.

Judge BENDER notes dissent.